## JONES AND PRICE v. THE MAHASKA COUNTY COAL CO.

1. **Damages**: RIGHT OF WAY: AD QUOD DAMNUM. While any individual or corporation owning coal lands or stone quarries may condemn a right of way thereto over the lands of another by *ad quod damnum* proceedings, yet the way so appropriated must be a public one, and if a road be constructed thereon its use must be open to the owners of other mines or quarries upon the payment of proper compensation therefor.

2. ———: ———: COSTS. Where the corporation seeking to condemn the land appeals from the assessment of the commissioners and the amount allowed to the land-owners on appeal is less than that awarded by the commissioners, the court may, under the general rules of law, direct a part of the costs of the appeal to be taxed to the corporation, notwithstanding the provisions of section 1252 of the Code.

*Appeal from Mahaska Circuit Court.*

### FRIDAY, OCTOBER 19.

In September, 1874, the Mahaska County Coal Company made an application in writing to the sheriff of Mahaska county, for the appointment of a sheriff's jury to assess the damages which J. G. Jones and Watkin R. Price would sustain by reason of the appropriation of their land by said company. It was stated in said application that the company had made a demand upon each of said parties for the right of way for the railroad of said company, to be constructed to its coal bank across the northwest quarter of section twenty-seven, in township seventy-five, range sixteen west, owned by said Price, and across the northeast quarter of the northeast quarter of section twenty-eight, in the same township and range, owned by J. G. Jones; that both Price and Jones had refused to grant the right of way across said land; that the parties were unable to agree upon the amount of compensation which should be paid, and therefore the company asked the sheriff for the appointment of six disinterested freeholders, to assess the damages for the right of way, fifty feet wide, over said lands. Notice was duly served upon Watkin R. Price, stating that the company had located the line of its road over the above described land owned by him, and that unless he proceeded to have the damages for said right

of way assessed according to law the said company would, on the 30th day of September, 1874, cause the same to be appraised and assessed by the commissioners appointed as provided by law. A similar notice was served on J. G. Jones, in relation to the land owned by him. Pursuant to such notices and application, the sheriff, on the 19th day of said month, duly appointed six disinterested freeholders to assess said damages. On the 30th day of said month, at the time fixed in the notices, the jury so selected and appointed, having been first duly sworn, proceeded in accordance with the statute to assess said damages. They assessed the damages occasioned by the location of the right of way over the land owned by Jones at five hundred dollars, and the damages occasioned by the location of the right of way over the land owned by Price they assessed at six hundred dollars.

From this assessment of damages the Mahaska County Coal Company appealed, and served upon Price and Jones each a notice that said appeal would be heard at the next term of the Circuit Court in said county. In the Circuit Court Price filed a petition, as follows:

"That he owned the northwest quarter of the northwest quarter of section twenty-seven, township seventy-five, range sixteen west; that the said Mahaska County Coal Company was not about to construct a railway over said land, to be used as and for a *public* way, nor was said railway intended for public use and utility; that the railway was a private way and intended as such, and to be used exclusively by said company for the transportation of its own coal from the mines of the company to the road of the Central Railroad of Iowa, and the road of the Des Moines Valley Railroad Company; that since the commencement of this proceeding for the condemnation of a right of way across these lands, and for the assessment of damages occasioned thereby, the said railway of the Mahaska County Coal Company has been completed for its entire distance and length, extending from the mines of said coal company to its junction with the Central Railroad of Iowa, a distance of about one mile; that it is not contemplated or intended by the said company to construct any other railway,

or to extend it in any direction beyond said points or *termini;* that said road has been completed more than a year; that no station of any kind has been erected on or near the line of road, or at either terminus thereof, or at any intermediate point thereon; that the company has not equipped the road, nor does it intend to equip it; that it does not own, nor has it in use any cars or locomotives, nor does it intend to have, nor was it ever contemplated to own, use, or have any; that the only arrangement made for running cars or locomotives upon and over the road is with the Central Railway Company of Iowa, and by the terms of which the last named company transports, in its own cars and by its own locomotives, coal for the coal company from its mines to such point or points, on the line of the said Central Railroad Company of Iowa, as the coal company may designate.

"He further avers that no regular trains are run over the road by any person or company, and that frequently for days and weeks in succession no trains or cars of any kind are run over the road, and that at no time nor upon any occasion, nor for any purpose whatever, are cars or trains run upon the road, except when and as the convenience and wants of said coal company seem to require; that the road is in fact a private road, for private use and for private purposes, and in no respect whatever is it, nor was it intended to be, a public way for the use of the public, or for public utility. The said Price therefore avers that the use to which said property is and has been appropriated is not of that public character for which private property is authorized to be taken, and that the Mahaska County Coal Company ought not to be permitted to institute, prosecute, or maintain this or any other proceeding for the condemnation of the said property for the right of way for its railway track. He therefore asks that upon the final hearing of the case the proceedings be dismissed, and that a decree be rendered enjoining and prohibiting said coal company from using or appropriating his property for the purpose of locating thereon its line of railway, and for general relief."

A like petition was filed by Jones. By agreement of parties the two cases were consolidated for the purpose of a trial, and,

on behalf of the coal company, one demurrer was filed to the two pleadings, in substance as follows:

1.   That neither of them sets up any legal reason why said company should not have a road to its mines.

2.   The statute gives the company the right to condemn lands over which to make a road to its mines.

3.   The petitions show that said company has connected its railway with two leading railroads of the State, thereby indirectly connecting its railway with all the cities of the State, and directly with the city of Oskaloosa, and the town of Enterprise.

4.   The record shows this cause to be here on the appeal of the company to reduce the damages assessed by the sheriff's jury, and for no other purpose; and the parties cannot raise the question set up in said pleadings, as the issue now stands.

5.   The cause is here to change the damages, and for no other purpose, as provided by statute.

6.   The pleadings show the company to be a public enterprise, and not a private one, and one clearly covered by the provisions of the statute.

7.   The petitions set up that the statute under which this proceeding is commenced is unconstitutional.

8.   The law under which said proceeding is brought is constitutional.

9.   The purpose for which the land is sought to be condemned is a lawful and public purpose.

This demurrer the court sustained in every part thereof. The cause was tried by a jury and a verdict was returned in favor of Jones for three hundred dollars, and in favor of Price for five hundred dollars. The costs of the appeal, taxed at $545.35, were taxed to the plaintiffs, and equally divided between them. Afterward the plaintiffs moved the court to retax the costs, and to adjudge that all the costs of trial be paid by defendant. The court overruled this motion. The plaintiffs appeal.

*M. E. Cutts* and *Lafferty & Johnson*, for appellants.

*Crookham & Gleason* and *John F. Lacey*, for appellee.

DAY, CH. J.—I. Section one, chapter 34, laws of the Fifteenth General Assembly, is as follows: "That any person,

**1. DAMAGES: right of way: ad quod damnum.** co-partnership, joint stock association, or corporation, owning, leasing, or possessing any lands having thereon or thereunder any coal, stone, lead, or other mineral, may have established over the land of another a public way from any stone quarry, coal, lead, or other mine, to any railway or highway, not exceeding (except by the consent of the owner of the land to be taken) fifty feet in width. When said road shall be constructed it shall, when passing through inclosed lands, be fenced on both sides by the persons or corporations causing said road to be established." Sections two and three, of this chapter, contain provisions for the condemnation of right of way. Section four is as follows: "Any owner, lessee, or possessor of lands having coal, stone, lead, or other mineral thereon, who has paid the damages assessed for highways established under this act, may construct, use, and maintain a railway on such way, for the purpose of reaching and operating any quarry or mine on such land, and of transporting the products thereof to market. In the giving of the notices required by this act, the applicant shall state whether a railway is to be constructed and maintained on the way sought to be established; and if it be so stated the jury shall consider that fact in the assessment of damages." We do not understand the appellants, either in the pleading filed or in their argument, to question the constitutionality of this statute. We rather understand them to concede that under the provisions of this statute a public road *may* be established, but to maintain that the road in question is a private one, intended simply for private use. In their arguments the appellants say: "To the allegation that this road is a private one, and so intended by the defendant, it is no answer to say that under the statute a public road *may* be established; the material inquiry is, what is the character of this particular road, and not what kind of a road may be established under the provisions of the statute. It is quite possible that, pursuant to those provisions, a road might be established that would promote the public welfare and accommodate the public convenience and be of public

utility, and it is entirely possible that a road may be established thereunder that would possess none of these elements, and that would in every material respect be entirely wanting in those elements and qualities that must necessarily characterize a public use."

It is to be observed, however, that the statute authorizes the construction only of a *public* way. No authority is conferred in the statute to construct a private way. The coal company is proceeding to condemn lands under this statute. If the condemnation is effected under the statute, the way condemned must be a public way, because the statute authorizes no other. When the plaintiffs allege that the railway of the coal company is a private one, they allege simply that the coal company has established, or is seeking to establish, under the statute, that which under the statute cannot exist. They simply, in effect, allege that that is private which the statute says is, and must be, public. The plaintiffs further allege that the railway is intended to be used by the company for the transportation of its own coal, from the mines of the company to the road of the Central Railroad of Iowa and the road of the Des Moines Valley Railroad Company. It matters not what the secret purpose and intention of the company may be. It is seeking to condemn land under this statute, and if it makes the condemnation it must accept all the conditions and provisions of the statute. One of these is that the way shall be public. We have no doubt that if the coal company condemns the right of way under this statute, it may be compelled to permit other owners of coal, stone, lead, or other mineral, upon making proper compensation, to have transportation therefor over its road.

II. The commissioners assessed the damages of Jones at $500, and those of Price at $600. Upon the appeal Jones

2. ——:——: costs.

was allowed $300 and Price $500. The court taxed all the costs of the appeal, amounting to $545.35, to the plaintiffs, to be equally divided between them. The effect of this ruling is, that the actual amount recovered by Jones is reduced to $27.32, and that recovered by Price is reduced to $227.38, although both were satisfied with the damages awarded by the commissioners. They are made to

bear the expense made by the company in reducing the award of the commissioners. This inequitable result was accomplished under section 1252 of the Code, which is as follows: "The corporation shall pay all the costs of the assessment made by the commissioners, and those occasioned by the appeal, unless on the trial thereof a less amount of damages is awarded than was allowed by the commissioners." This section does not provide that in any case the land owner shall pay all the costs of the assessment and appeal. It simply makes it imperative upon the court to tax all the costs of the assessment and of the appeal to the corporation, when the damages recovered are not less than those awarded by the commissioners. In such case the court has no discretion, but must tax all the costs to the corporation. If the damages recovered are less, the court is not under obligation to tax all the costs to the corporation. But the court is not under obligation to tax all the costs to the land owner. In such case the court is at liberty to make a proper distribution of the costs, under the general rules of law. If the land owner has appealed and recovered less than was awarded by the commissioners, the court may tax to him the costs of the appeal. Upon the other hand, if the corporation has appealed, the statute does not exonerate it from the payment of the costs. In assessing all the costs to the land owners, the court erred. Upon this point the cause will be reversed and remanded to the court below for such assessment of costs as may seem proper, under the general provisions of the law, without reference to section 1252 of the Code.

REVERSED.

SEEVERS, J., having been of counsel, took no part in this case.