O'NEIL v. LAMB & SONS.

1. **Municipal Corporations:** STREET RAILWAYS: POWER TO AUTHORIZE USE OF STREETS. The grant by a city of the right to construct and operate a railway through its streets will be presumed to be for such a railway as the city has power to authorize in its streets, and proof that such railway is used by its owners in transporting their own property will not establish the fact that it is not also a public way.

2. ——: ——: ——. Section 464 of the Code, as amended by chapter 7, laws of 1874, confers upon cities the power to grant the right to construct and operate railways in their streets, and such power may be exercised by cities in their discretion, subject only to equitable control, and proper police regulations.

*Appeal from Clinton Circuit Court.*

SATURDAY, JUNE 12.

THOMAS O'NEIL, as plaintiff claims, was killed by reason of the operation of a horse railroad owned by the defendants, and this action was brought to recover damages therefor.

A demurrer to a portion of the answer was overruled, and the plaintiff appeals.

*John I. Mullany* and *J. S. & D. J. Darling*, for appellant.

*G. B. Young* and *E. S. Bailey*, for appellee.

SEEVERS, J.—The petition alleged the defendant was engaged in wrongfully and unlawfully operating a private railway in the streets of the city of Clinton, and that the defendant was run over by cars on said road. It further appeared from the petition that the cars were drawn by horses.

The defendant denied it was unlawfully or wrongfully engaged in operating said railroad, and among other things alleged:

"That the defendant was duly authorized to lay and con struct said railway track and draw cars thereon in said streets and said avenue as aforesaid, by said city of Clinton, which city is a municipal corporation, organized and existing under the general laws of the State of Iowa for the organization of cities and incorporated towns, to-wit: Under chapter 10, title IV of the Code, by an ordinance duly passed by the city council of said city, on the 16th day of December, 1878, a copy of which is hereto annexed, marked Exhibit A, and made part hereof; and that said track was so laid down with the consent of the owners of the property abutting upon said streets and avenues; that the defendant, in laying said track and in operating said railway has at all times complied, in all respects, with all the provisions, conditions, terms and requirements of said ordinance; that said railway, or the operation thereof as aforesaid, has not, at any time, in any manner obstructed or interfered with the free, safe and easy passage of travelers and vehicles along and across said streets and avenue, but on the contrary said streets and avenue have been greatly improved for travel and for the passage of travelers and vehicles thereon by reason of said track being laid

thereon, and by the grading done by defendant in construct-ing its said railway, and that the said railway, or the drawing of cars thereon as aforesaid, has never been any more incon-venience to travelers on said streets and avenue, and occa-sioned no more liability to accidents thereon, than the driving and passage of ordinary wagons and vehicles thereon; and that the transportation of defendant's lumber on said cars, as aforesaid, was not as inconvenient to travelers or people residing on said avenue, or to the general public, and the liability of injuries occurring thereby was not as great, as if said lumber had been moved and transported upon ordinary two-horse wagons.

"That the moving of said cars on said track, in the manner moved by defendant, is equally as safe for travelers and peo-ple residing on said avenue as the passage of ordinary vehi-cles thereon, and is not attended with any more, or as much, danger as there would be from the passage of such vehicles to the general public or people on said avenue, and that said railway, or its operation, has never, in any manner whatever, been or constituted a nuisance; that in the operation of said railway the defendant has at all times exercised due care and diligence, and has not appropriated any part of said streets or avenue to the exclusion of other travelers thereon, and the transportation of lumber on said cars is equally free from danger or risks to accidents to any one as the transpor-tation of such lumber in any other manner possibly could be, and that the defendant had full right to so transport its lum-ber and products; that said avenue is not one of the chief or main traveled streets of said city, but is a short avenue, only one block in length, and in the outskirts of said city, and far removed from the chief business portion of said city, and but few people reside or travel thereon."

To this portion of the answer the plaintiff demurred on several grounds, but in argument only two propositions, as we understand, are insisted on.

I.  It is said that it "affirmatively appears by the answer

that at the time said ordinance was passed the defendant was a private corporation, engaged in the manufacture of lumber and shingles, at the city of Clinton, and that defendant was authorized to lay and construct its track and draw cars thereon.

It is not claimed by the defendant that it is a corporation. It is shown, however, that it is a partnership. But the latter may own and operate a railroad as well as the former. If the city has the power to authorize a partnership to construct and operate such a road then it cannot be regarded as a nuisance. *The City of Clinton v. The Clinton and Lyons. Horse Railway*, 37 Iowa, 61; *Davis v. The C. & N. W. R. Co.*, 46 Id., 389. Counsel for the appellant assert with great apparent confidence that it appears from the answer and ordinance, which is made a part of the answer, that the railroad in question is a private way, and it is insisted the city has no power to grant anyone the right to use and occupy the streets, or any of them, for his exclusive and private benefit. Whether the legal proposition stated is correct we have no occasion to determine, for the reason that a careful consideration of the answer and ordinance fails to disclose that authority was granted to construct and operate a private road, or that it appears from the answer that it is such in fact.

1. MUNICIPAL corporations: street railways: power to grant use of streets.
Conceding the city had no power to make a private grant, the presumption must be indulged, in the absence of words indicating otherwise, that the city did and intended that which it had the power and authority to do.

The mere fact that at the time the accident occurred the defendant was engaged in transporting its own property is not sufficient to indicate the road was a private road. Certainly the defendant would not be debarred from transporting its own property, and that it did so does not sufficiently establish that it is not a public carrier. *Jones* and *Price v. Mahaska County Coal Co.*, 47 Iowa, 35.

II. The City of Clinton was organized under the general

incorporation law, and section 464 of the Code, as amended by chapter seven of the laws of the fifteenth general assembly, provides that such cities "have the power to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys and public places; but no railway track can thus be located and laid down until after the injury 'to property abutting upon the street, alley or public places upon which such railway track is proposed to be located and laid down has been ascertained and compensated in the manner provided for taking private property for works of internal improvement in chapter 4, of title 10, of the Code of 1873." It is not claimed that this statute was repealed or in any respect modified by chapter 47 of the laws of the fifteenth general assembly. Regarding section 464 of the Code in full force and effect, the city thereby was vested with full power and authority to grant the defendant the right to construct and operate the road upon complying with the provisions of the statute in relation to abutting owners. The requisite power having been granted, all else was a matter of detail and within the discretion of the city, subject only to equitable control and proper police regulations. *The Newton & Southwestern R. Co. v. The Mayor*, 36 Iowa, 299.

To prevent any possible confusion or misconstruction it may be well to remark that the city owned the fee title to the streets, and that the answer shows the consent of the abutting owners had been obtained.

AFFIRMED.