## ROBERTS VS. WILLIAMS ET AL.

Where the owner of land, through which a road is located, objects to the proceedings of the commissioners appointed to view and mark out the road, it is immaterial whether he was the owner of the land at the time of the view, or succeeded subsequently to the estate of the then owner : it is sufficient that he became the owner before the final action of the county court, and presented a sufficient objection to the establishment of the road.

And where the county court proceeds to make a final order establishing the road, after such owner of land has become a party to the proceeding, he has the right, upon showing that the final order of the county court is erroneous, and that he has lost his right of appeal in the mode provided by the statute, without any fault or negligence on his part, to a writ of certiorari, to bring the proceedings before the Circuit Court for revision.

Without the consent of the owner, private property cannot be taken for private use, even under the authority of the Legislature; nor can it be taken for the public use without providing for just compensation, to be first made to the owner. (*Martin, Ex parte,* 13 *Ark.* 198.)

It is by virtue alone of the right of eminent domain, that private property is taken for the purpose of being used for a road, and whether the road be a public or private one, it is equally for the public use.

No valid and binding order could be made by the county court, establishing a private road where the report of the commissioners failed to advise the county court, in pursuance of the statute, of the ownership of the lands, and of the damages to be sustained by each owner, through whose lands the road was laid out.

### *Appeal from Phillips Circuit Court.*

Hon. CHARLES W. ADAMS, Circuit Judge.

PALMER, for the appellant. That the petition of Williams should have accurately described the *termini* of the proposed private road, See *Digest, ch. 140, sec.* 62.

That Williams should have deposited "a sufficient sum of mo-

ney," before the court could appoint viewers, See *Digest, chap.* 140, *sec.* 63.

That the viewers should have been sworn before entering upon their duties; and that the record should show that fact, See *Digest, chap.* 140, *sec.* 63, 47. *Breckenridge vs. Ward,* 1 *Mon.* 57. *Pollard vs. Ferguson,* 1 *Litt.* 196. *Elliott vs. Lewis,* 1 *A. K. Marsh.* 143. *Hudson, as ad. vs. Breeding et al.,* 2 *Eng.* 445.

That the viewers should have stated the names of the owners of the particular lands, if known, and if unknown, should have stated that fact, and should have particularly described each tract of land. *Digest, chap.* 140, *sec.* 64.

That the viewers should have assessed damages as to all of the lands over which the road passed. *Dig., chap.* 140, *sec.* 64, 67, 53. *Martin et al. Ex parte,* 8 *Eng.*

That there was error, for which the proceedings should be quashed. See *Roberts vs. Williams et al.,* 8 *Eng.*

PIKE & CUMMINS, for appellees. The county courts have general jurisdiction over the matter of public and private roads in this State. See 9 *Art. Con. Chap.* 49 *and* 140, *Rev. Stat.*

The counties are quasi corporations, whose active agents are the courts. Their powers and acts, should be liberally construed. *Ang. & Am. on Corp.* 17, 18.

The only judgment which can be given on certiorari, is one of quashal or affirmance of the proceedings. 4 *Ark. R.* 473; 5 *ib.* 358. 6 *Eng.* 613.

Nothing outside of the record returned, can be assigned for error, pleaded or adjudicated upon. 6 *Eng.* 613.

The county courts are not *inferior.* They have in their favor the presumptions which attach to the proceedings of superior courts of general jurisdiction. It is not necessary that the facts conferring jurisdiction should appear of record, or a strict compliance be shown with the statute under which they act. 6 *Eng.* 519, 604. 4 *Cow.* 292. 6 *Wend.* 447. 6 *Eng.* 157.

No objection here raised affects the jurisdiction of the court,

so that at most, if the matter appeared of record, it would only be a mere irregularity, not rendering the proceeding void.    1 *Hill* (*N. Y.*) 130.

The *last* proceedings being void and quashed, any thing stated or appearing therein, cannot be used to defeat the *first* proceeding.

All citizens were parties to the first-proceedings, and as no objection was then raised, or damages demanded, every supposed objection is now waived.    *Sec.* 67, *ch.* 140, *Rev. Stat.* 15 *Wend.* 374, 610.    3 *Mon.* 266.

Mr. Justice SCOTT delivered the opinion of the Court.

This is an appeal from the Circuit Court of Phillips county, in a case where a portion only of certain proceedings in the county court of that county, touching a private road, was quashed, the whole proceedings having been brought into the former court by certiorari to the latter.    It appears, from the transcript of the certified proceedings of the county court, that, on the 15th of April, 1850, Williams filed his petition representing that he labored under great disadvantage, by reason of not having a road from his plantation to the Mississippi river, and asking that commissioners might be appointed to view and mark out a route for a private road, and assess the damages, which, in their judgment, would be done to the lands through which the proposed road might run.    The county court, on the same day, granted the prayer of the petitioner, and appointed three commissioners, requiring them to meet at a specified time and place, "to view and lay out the route of the proposed road, and assess the damages which might be done to the land through which the same should pass," and to report their proceedings at the next term.    It does not appear whether or not these commissioners were house-holders, or whether any sum of money was deposited.

On the 10th July following, two of these commissioners reported that, on the day appointed, they viewed and marked out a route, "commencing at the crossing of Old Town Lake, at John

R. Williams', allowed twenty-five feet on the top of the south bank of said Lake, passing through sections 21, 22, 27, and 26, in township 3, south of range 3 east, one hundred and eighty poles, or thereabouts, from the north west corner of section 26, and two poles east of two red or black oak trees, which stand two or three feet apart, and under the bank of the Lake with the letter R, cut on each, the road takes a turn to the s. s. east, and runs on a ridge of land, on which old Mr. Owen and Boston D. Owen now live, in section 25. On the top of this ridge, or slue bank, we allow twenty-five feet from Old Town Lake to the mouth of the slue, where it enters into the overflow of Long Lake and Old Town, between the farms of B. D. Owen and John Reader, except in passing through the farms of old Mr. Owen, we remove, or set in his fence sixteen feet along his entire line, and allow him, at the rate of fifty dollars per acre damages for the land thus appropriated. From the mouth of the slue, through the overflow, the route will pass in a direct line to the nearest point on Long Lake, twenty-five feet wide, then down that lake to the Mississippi river." It would seem, from this report, that the commissioners failed to describe so much of the land through which the route passed, as lay between the point where the route turned near the oak trees, and the Mississippi river. They also failed to name the owners of the land that they did describe; nor did they state that the owners were not known, if such was the case, and failed to give their opinion of the damages to be sustained by each land owner, through whose land the route passed. Nor does it, in any way, appear whether or not the commissioners were ever sworn to discharge their duties faithfully and impartially, or whether they were of opinion that the road was necessary and proper, otherwise than as an inference from their having laid it out.

The report, however, having been "read and examined by the court," was, on the day of its presentation, "approved and confirmed, and ordered to be spread upon the record." It does not appear whether or not the court was of "opinion that the road

was necessary," nor was any order then made establishing the route reported "as a private road," as is directed by the statute in case the court should be of that opinion after the coming in of the report." (*Digest, page* 908, *sec.* 66.) No further proceedings. seem to have been taken in the cause, which, by operation of law, was continued from term to term, until in the April term, 1852, when the appellant Roberts appeared in court, and presented a petition, signed by a number of citizens of the township, who seem to have supposed that the route reviewed had been already established as a private road, representing that the supposed road ran directly through the lands of Roberts and R. Owen, Sr.; that their said land was in cultivation and under fence, and they desired to cultivate it; that the supposed road materially injured and damaged the farms of both of them, and that another route could be laid out that would be nearer, and on equally as good and high ground, and as convenient for Smith and Williams, for whose convenience the road was laid out, and which would in no way damage the farms of Roberts and Owens; and they prayed that the route should be so changed, and that commissioners be appointed to review, &c.

The court, on this application of Roberts, granted the prayer of the petitioners in his behalf, and, appointing three commissioners, ordered them to meet at the house of Roberts, on the first Monday of July after, for the discharge of their duties specially pointed out, and to report their doings at the next term (July.) The April term, however, having continued into the month of June, it appears that, on the 22d day of this month, a report "was received, approved, confirmed, and ordered to be spread of record," by the court, purporting to be made and signed by two of the three commissioners, that is to say, by Daniel McMahon and John Rogers, whose signatures are attested as follows: "Signed by John Rogers, in presence of J. W. Smith," then endorsed, "This day, appeared before me, John Rogers, legally *orthor* to subscribe Daniel McMahon's name to within instrument. Sworn to before me. Berry Talby, J.P." This report set out that the commis-

sioners had viewed all the proposed routes, and finding no suitable ground—all being subject to overflow—they "decline making any change," and that the road must "remain as previously laid out, through the lands of Roberts and others, passing to the right of Owens' farm." Thereupon, on the same day, the court order that the road recommended by the report of the commissioners, at the July term, 1850, shall be "confirmed as a private road to said John R. Williams and the said James W. Smith, and that a private road be established, in accordance with said report, not exceeding twenty-five feet in width," and that Roberts pay all the costs. It in no way appears that Roberts was present, either in proper person or by attorney, when this final action was had in the cause; and upon the ground of having lost his right of appeal by surprise, from this premature final action of the county court, and of the errors of that court in these proceedings in which he had thus shown his interest, and had become a party, and been adjudged to pay costs, and had been adjudged no compensation for the injury to his land that had been made known to the court previously to its final action in the premises, he was awarded the certiorari. But, upon the hearing in the circuit court, that court found error only in the petition for re-view presented by Roberts, at the April term, 1852, and in the proceedings thereon; and quashed these only, leaving untouched all the proceedings establishing the private road in question: from which judgment of the circuit court, Roberts appealed to this court.

In the view we take of this case, it is immaterial whether or not Roberts was the owner of the land at the time of the original review, or succeeded subsequently to the estate of Erwin, who was then the owner, as is stated in his petition for the certiorari. It is sufficient that he became owner before the final action of the county court, showed his interest to that court, suggested that his land would be injured, and objected to the proceedings, it is immaterial in what form.

And to sustain his right to bring these proceedings in question by this mode of proceeding, it is sufficient that he has thus in-

tervened, was recognized as a party, as he unquestionably was, in the rendition of a general judgment of costs against him upon the making of the final order establishing the road, if not otherwise, showed that these proceedings were erroneous, and that he had lost his right of appeal in the mode provided by the statute, without any fault or negligence on his part.

Without the consent of the owner, private property cannot be taken for private use, even under the authority of the Legislature; nor can it be taken for the public use without providing for just compensation to be first made to the owner. (*Martin, Ex parte*, 13 *Ark.* 198.) And when rightfully taken for the purpose of being used for a road — whether a public or a private one — it is in virtue alone of the right of eminent domain, and is equally for the public use in either case; although in the one the compensation to the owner of the land and the burthen of keeping the road in repair, may be assessed and imposed upon one citizen only, or upon a few, or a company, who may be more immediately interested in it; and in the other case, upon a municipality, or upon the public at large. Upon no other ground can the constitutionality of the private road law be sustained; and it can well rest here in view of the obligation upon the sovereign power, so to provide as to give each individual of the community a reasonable opportunity to enjoy the privileges secured; and to discharge the various duties imposed upon him as a citizen.

In response to the objection of Roberts, in the county court, to these proceedings, there is no pretence that any vendor of his had either granted such an easement to Smith and Williams, or to the public at large, and no sufficient time had elapsed from which such a grant could be presumed. So far from this being the case, there is no response at all in the record to his objection, as affecting him through any previous owner of the land, even if it be conceded that another owned the land when the route was marked out in 1850; because the original report of the commissioners failed to advise the county court in pursuance of the statute of the ownership of the lands, and of the damage to be sus-

7BB

tained by each owner through whose lands the road was laid out. And hence, no foundation is laid upon which any presumption can be rested that the county court, although it did not appear upon its record, had in fact, by virtue of its general jurisdiction over the subject, called in the land owners, who were likely to be damaged by the proposed road as marked out, and either adjudicated upon their right to compensation and its quantum, if claimed; or by their default had obtained their implied consent to the proposed public use of their property. There being no foundation upon which to presume, in the special proceedings for the establishment of a private road upon the petition of the party desiring it, as provided by our statute, that these land-owners had implied notice, as in the general proceedings for the establishment of new roads upon the petition of at least twelve householders of the township, in which the statute provides that, previously to any intended application to the county court, notice must be given by advertisement set up at two or more public places in each township through which the proposed road is to pass, for at least twenty days prior to such application. And hence, although no objection had been interposed—and waiving all other questions as to the other objections pointed out—the approval of a report so substantially and radically defective as this is in these two particulars, and also any subsequent action of the county court in ordering, in pursuance of the statute, the establishment of the road upon the basis of such a report, had no other irregularity intervened, would have been clearly erroneous, and could have concluded the rights of no land owner, until after a sufficient time had first elapsed, when from acquiescence a grant or dedication might be presumed to have been made, either by himself or by those from whom he derived his title. Much more then was such action erroneous after Roberts had intervened and affirmatively suggested his ownership and the damage to his land; and, by thus interposing his constitutional right of private property, had paralised the power of the county court until his rights should be first judicially ascertained and provided for, by

just compensation to him, in case the court should find his suggestions true; and determine, nevertheless, that his property should be taken for the public use.

We think, therefore, that the Circuit Court erred in its judgment, and that the entire proceedings of the county court ought to have been quashed. The judgment of the Circuit Court of Phillips county, in this cause, must therefore be reversed, and the cause remanded to that court, with instructions to quash the entire proceedings accordingly.