2010 Ark. 117

**Perry L. LINDER, Jr. and Kathy Linder, Appellants,**

v.

**ARKANSAS MIDSTREAM GAS SERVICES CORP., Appellee.**

No. 09–705.

Supreme Court of Arkansas.

March 11, 2010.

Mays & White, PLLC, by: Richard H. Mays, Heber Springs, and Ginger L. Harper, Little Rock, for appellants.

Daily & Woods, P.L.L.C., by: Jerry L. Canfield, Fort Smith, and Coby W. Logan, Little Rock, for appellees.

ROBERT L. BROWN, Justice.

Appellants Perry L. Linder and Kathy A. Linder appeal from a Cleburne County Circuit Court order finding that appellee Arkansas Midstream Gas Services Corporation (Midstream) had the authority to exercise the power of eminent domain over appellants' land to construct and maintain

a natural gas pipeline. Authority for the circuit judge's order was Arkansas Code Annotated section 23–15–101, which provides in pertinent part as follows:

All pipeline companies operating in this state are given the right of eminent domain and are declared to be common carriers, except pipelines operated for conveying natural gas for public utility service.

Ark.Code Ann. § 23–15–101 (Repl.2002). The Linders assert on appeal that the circuit judge's order was in error because section 23–15–101 is unconstitutional in that it grants private corporations the right of eminent domain to acquire property for private, rather than public, use. We disagree with the Linders' conclusion that this is a private use, and we affirm.

Midstream is an Arkansas pipeline company currently engaged in a project to construct a pipeline for natural-gas transmission across land located in Cleburne County. The Linders own land located in Section Twenty–Five (25), Township Ten (10) North, Range Nine (9) West, Cleburne County.

After an unsuccessful attempt to negotiate a right-of-way agreement with the Linders, Midstream petitioned the Cleburne County Circuit Court on September 17, 2008, to assert the power of eminent domain over the Linders' land under Arkansas Code Annotated sections 23–15–101 and 18–15–303.

On October 6, 2008, the circuit judge entered an order of possession granting Midstream the immediate right of entry onto, and the possession of, the following portions of the Linders' land and approved this use:

A. A permanent pipeline easement 60.00 feet wide lying 30.00 feet on both sides of the following described centerline:

Lying in the SW 1/4 and the SE 1/4 NW 1/4 of Section 25, Township 10 North, Range 9 West, Cleburne County, Arkansas, described as commencing at the Northwest Corner of said SW 1/4 and running thence S 01 °49'58" W along the West line of said SW 1/5 154.97 feet to a gas line said point being the point of beginning; thence run S 88°03'24" W, 1532.08 feet; thence N 39–19'04–E, 885.40; thence N 21'38'47" E, 945.28 feet to the North line of said SE 1/4 NE 1/4, said point being the point of termination.

B. A Temporary Construction Easement 15.00 feet wide lying adjacent to the north side of said 60.00 feet permanent easement.

That same day, the Linders answered Midstream's petition and denied that Midstream was entitled to exercise eminent domain. In the alternative, the Linders requested a trial by jury on the amount of just compensation.

The Linders next moved for partial judgment on the pleadings and for an injunction and damages. They contended that Midstream was not entitled to exercise the right of eminent domain under Arkansas Code Annotated section 23–15–101 because it was a pipeline company operated to convey natural gas for public utility service and that, alternatively, section 23–15–101 was unconstitutional. The Linders further asked the circuit judge for an injunction directing Midstream to remove the pipeline and all other equipment and materials from their property and for damages for illegal trespass. Midstream responded and filed an affidavit by Danny Trowbridge, a land-acquisition supervisor for Midstream.

According to Trowbridge's affidavit, Midstream was not a public utility company and the Arkansas Public Service Com-

mission had determined that Midstream could exercise the eminent-domain authority delegated by section 23–15–101 as a common carrier without obtaining a certificate of convenience and necessity or other approval from the Public Service Commission prior to doing so. As to the pipeline project, Trowbridge's affidavit provided the following:

> The subject gas transmission line project ("Puckett Line") will cross the Defendants' property in Section 25, Township 10 North, Range 9 West, for the purpose of connecting two natural gas production wells located in Section 27, Township 10 North, Range 9 West to the pipeline. The natural gas produced from the two gas production wells in Section 27 will be transported through the pipeline crossing portions of Sections 27, 26, 25 and 24 of the Township 10 North, Range 9 West and also a portion of Section 19 in Township 10 North, Range 8 West. The gathering pipeline will connect to the GEO III line, a main trunk transportation line, in said Section 19. As to the existing and proposed gas production wells which will be connected to the Puckett line, there are several working interest owners (as to which Chesapeake Operating, Inc. an affiliate of Arkansas Midstream, is only one) who own the gas which will be transported through the Puckett line and there are multiple royalty owners who will receive royalties from the gas sold from the gas transported through the Puckett line. There are multiple other potential working interest owners (including unleased surface owners who may elect to participate in the drilling of wells in the involved sections) to whom

the Puckett line would provide the only existing (after construction) means of transporting natural gas to markets. As the Puckett line will gather gas from several gas production units, the line cannot be constructed under the lease rights applicable to any one governmental section.

Following a hearing on the matter, the circuit judge entered his order denying the Linders' motion for judgment on the pleadings on April 13, 2009. The circuit judge found that Midstream was not a public utility company, and that, pursuant to sections 23–15–101 and 18–15–1303, Midstream was entitled to proceed with the eminent-domain action. On April 27, 2009, the circuit judge entered an amended order certifying the judgment as final under Arkansas Rule of Civil Procedure 54(b). The remaining issue to be determined was just compensation, should this court affirm the order.

The sole issue presented by this appeal is the constitutionality of section 23–15–101 as applied to the facts of this case.[1] The Linders, as already noted, raised their constitutional challenge in their motion for judgment on the pleadings, which was denied by the circuit judge. Nevertheless, if on a motion for judgment on the pleadings, matters outside of the pleadings are presented to and not excluded by the circuit judge, the motion shall be treated as one for summary judgment. See Ark. R. Civ. P. 12(c). In the instant case, Midstream's response to the Linders' motion for judgment on the pleadings was supported by the Trowbridge affidavit, and the circuit judge did not specifically exclude it from consider-

---

1. Counsel for Midstream at oral argument, in response to a question from the court, stated that the Linders' constitutional challenge to section 23–15–101 was as applied to the facts of this case, and not a facial challenge. Counsel for the Linders did not challenge this statement on rebuttal at oral argument. We, therefore, analyze this issue as one challenging the constitutionality of the statute as applied to these facts.

ation. Hence, we treat the circuit judge's order as one for summary judgment and apply the appropriate standard of review accordingly. *See Bennett v. Spaight*, 372 Ark. 446, 277 S.W.3d 182 (2008).

■ Ordinarily, upon reviewing a circuit judge's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.*, 369 Ark. 392, 255 S.W.3d 453 (2007). But in a case such as this one, which does not involve the question of whether factual issues exist but rather the application of legal principles, we simply determine whether the appellee was entitled to judgment as a matter of law. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. A circuit judge's conclusion on a matter of law is reviewed by this court de novo and given no deference on appeal. *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870.

The Linders assert that section 23–15–101 is unconstitutional in that it grants private, for-profit corporations, such as Midstream, the right of eminent domain to acquire private property for private use in violation of article 2, section 22, of the Arkansas Constitution.[2] Pointing to the

Trowbridge affidavit, the Linders contend that Midstream's use in taking their property is "clearly a private one" in that Midstream is undertaking "by special agreement in particular instances to transport gas for Chesapeake, a few royalty owners and 'other potential working interest owners.'" Citing *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967), the Linders assert that the use for which the right of eminent domain is exercised must in fact be a public one and that if the taking is for the exclusive use of a collection of individuals less than the public, the use is stamped as a private one. The Linders urge this court to declare section 23–15–101 unconstitutional "because it focuses on the nature of the entity rather than its purpose," thereby granting the power of eminent domain to corporations for private use.[3]

■ Article 2, section 22, of the Arkansas Constitution provides that "[t]he right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." The power of eminent domain is an attribute of, and inherent in, a sovereign state. Ark. Const. art.

2. Midstream urges this court to affirm summarily due to the Linders' failure also to challenge the circuit judge's ruling on the basis of Arkansas Code Annotated sections 18–15–1301 to –1303 (Repl.2003). We decline to do so. While it is true that there are two statutory delegations of the power of eminent domain to pipeline companies, sections 18–15–1301 to –1303 and section 23–15–101, only section 23–15–101 speaks of pipeline companies in terms of common carriers. On appeal, the Linders have not challenged the General Assembly's general power to delegate the right of eminent domain to pipeline companies, which is authorized by article 12, section 9 of the Arkansas Constitution, or denied that a pipeline company may rightfully exercise the power of eminent domain in the appropriate circumstances. Rather, the Lin-

ders have raised a constitutional challenge to the specific language of section 23–15–101, as applied to these facts, arguing that it grants Midstream the power of eminent domain to acquire private property for private use. The fact, however, that the Linders have not challenged the general grant of eminent-domain authority contained in sections 18–15–1301 to –1303 on appeal does not, by itself, decide this appeal in Midstream's favor.

3. Though from time to time the parties and even our case law speak in terms of public *purpose*, the Arkansas Constitution uses the term public "use." *See* Ark. Const. art. 2, § 22. We are guided by our constitution in this opinion.

2, § 23; *Pfeifer v. City of Little Rock,* 346 Ark. 449, 57 S.W.3d 714 (2001).

It is a well-established principle that the right of eminent domain cannot be exercised for the purpose of acquiring property for private use; the Legislature cannot exercise the power of eminent domain nor delegate its exercise except for public use. *See, e.g., Ark. State Highway Comm'n v. Alcott,* 260 Ark. 225, 539 S.W.2d 432 (1976); *Ozark Coal Co. v. Pennsylvania Anthracite R.R. Co.,* 97 Ark. 495, 134 S.W. 634 (1911); *Roberts v. Williams,* 15 Ark. 43 (1854). Without the consent of the owner, private property cannot be taken for private use, even under the authority of the General Assembly. *Raines,* 241 Ark. at 1082–83, 411 S.W.2d at 493; *Mountain Park Terminal R.R. Co. v. Field,* 76 Ark. 239, 88 S.W. 897 (1905); *Williams,* 15 Ark. at 46.

Whether private property is being taken for a public or private use is a judicial question which the owner has a right to have determined by the courts. *Pfeifer,* 346 Ark. at 460, 57 S.W.3d at 721; *Raines,* 241 Ark. at 1083, 411 S.W.2d at 493; *Hogue v. Housing Auth. of N. Little Rock,* 201 Ark. 263, 144 S.W.2d 49 (1940). The landowner bears a heavy burden in proving that the taking was not for public use. *City of El Dorado v. Kidwell,* 236 Ark. 905, 370 S.W.2d 602 (1963); *Woollard v. State Highway Comm'n,* 220 Ark. 731, 249 S.W.2d 564 (1952).

Eminent-domain statutes are strictly construed in favor of the landowner. *Pfeifer,* 346 Ark. at 459, 57 S.W.3d at 720; *Loyd v. Sw. Ark. Util. Corp.,* 264 Ark. 818, 580 S.W.2d 935 (1979). However, all statutes are presumed to be constitutional and this court resolves all doubts in favor of constitutionality. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy,* 2010 Ark. 40, 358 S.W.3d 890. The party challenging a statute's constitutionality has the burden of proving that it is unconstitutional. *Id.*

This court has had the occasion to address the arguments raised by the Linders, or arguments very similar to them, in several previous cases over the years. For example, in *St. Louis, Iron Mountain & S. Railway Co. v. Petty,* 57 Ark. 359, 21 S.W. 884 (1893), a landowner challenged a railroad's institution of eminent-domain proceedings for the purpose of building a side track from the railway's main line to a private coal mine adjoining the landowner's property on the basis that the taking was not for public use, but rather for the sole use and benefit of the private coal mine. In upholding the railway's exercise of eminent domain as a public use, we said

> To be public, the user must concern the public. If it is an aid in facilitating the business for which the public agency is authorized to exercise the power to condemn, *or if the public may enjoy the use of it, not by permission, but of right, its character is public.* When once the character of the use is found to be public, the court's inquiry ends, and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user.
>
> . . . .
>
> Moreover, at that point, upon this very land, as the proof shows, there is established a shipping station for coal. The railway's franchise empowers it to establish none but public stations. It can place no unreasonable restraint on the right of the public to use it. If the railway maintains a coal shipping station at that point, and unreasonably refuses to accord to the appellee, or others who have occasion to ship coal therefrom, facilities for doing so, the courts can afford a remedy for the wrong; and if the railway abuses the privileges of con-

demning private property to a public use, by turning the property acquired by condemnation to a private use, doubtless the easement it acquired by condemnation may be revoked, and the possession restored to the owner of the fee.

The fact that tracks are extended upon the lands of the coal company for its exclusive use is not a matter to concern the appellee, for the reason before stated, that is, a public use is first subserved. If no use could be made of the side tracks except to subserve the interest of the coal company, the power to condemn could not be exercised for that purpose. But, as we have seen, that is not the case.

*Petty, supra* (internal citations omitted) (emphasis added).

A second case is *Ozark Coal Co. v. Pennsylvania Anthracite R.R. Co.*, 97 Ark. 495, 134 S.W. 634 (1911). In *Ozark Coal*, a coal company exercised the power of eminent domain to condemn a portion of the appellant's land to connect its coal mine with a main rail line under a 1905 act granting mining corporations the right of eminent domain. The same stockholders owned both the coal mine and the railroad, and the appellant challenged the taking on the basis that the sidetrack was not being built for the public's use, but rather for the purely private use of the mining company. The appellant also challenged the constitutionality of the Act delegating the right of eminent domain to coal mines.

The 1905 act in question provided, in pertinent part: (1) that all persons, owning or controlling, any mineral lands in the state had the same right to own and construct short lines of railway as necessary for the successful mining and marketing of their minerals; (2) that all such persons or incorporations would be governed by the laws governing railway corporations, would have the same right to acquire right of way over, under, or through private lands as railway incorporations in the state and the same right to exercise eminent domain in acquiring such right of way; and (3) that "when so incorporated and constructed such short lines of railway and tramway, shall be, and are hereby entitled to all the rights, powers, and privileges of a common carrier." *Ozark Coal*, 97 Ark. at 495, 134 S.W. at 634.

This court, in upholding the right of the mining company to exercise eminent domain, said

It will be observed that the act of 1905 does not attempt to limit the use to which the railroad may be put, though it authorizes the construction and operation of such short line of railway or tramway "as may be necessary to the successful mining and marketing of said coal, marble and minerals." On the contrary, it is clear from the terms of this statute that, when so incorporated, such lines of road become public carriers subject to the general statutes of the state governing railroads. The evidence in the case shows that the road is constructed and is to be used principally in developing and operating the coal mine of the Pennsylvania Anthracite Coal Company; yet that is not the sole use. The coal mine of appellants is on the line of the road, and the owners thereof can, under the law, have the use of the railroad as a common carrier for the transportation of coal and other commodities. The evidence also shows that a townsite is being laid out, and a town is to be established at one terminus of the railroad, and that the road can be used for shipping purposes by those who may have business there. Other coal mines in that belt may use the road. The law gives all the right to use it on equal terms.

"[I]t makes no difference that the mineowner may be the only member of the public who may have occasion to use the way after it has been established. The character of the way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small. And, where the use to which the property is appropriated is a public use, the Legislature is the judge of the expediency of making the appropriation, and its action in making the appropriation cannot be questioned in the courts."

*Ozark Coal*, 97 Ark. at 495, 134 S.W. at 634 (quoting *Phillips v. Watson*, 63 Iowa 28, 18 N.W. 659 (1884)).

As a third case in point, this court again addressed similar issues in *Hale v. Southwest Arkansas Water District*, 244 Ark. 647, 427 S.W.2d 14 (1968). In that case, a water district commenced an action to condemn a six-mile-long right of way for pipe lines and a canal to transport water from the Millwood Dam Reservoir on Little River to the Nekoosa–Edwards Paper Company. Because the paper company was the sole consumer of the water district at that time, several landowners contended that the taking was for private rather than public use in violation of article 2, section 22 of the Arkansas Constitution. In holding that the taking was for a public use, this court began by noting that the statute under which the water district was incorporated, Ark. Stat. Ann. § 21–1408, required it to transport, distribute, sell, furnish, and dispose of such water to any person at any place. Then, after citing the above-quoted language from *Petty*, this court said

Thus the water district here stands in much the same position as the railroad. By law it is obligated to serve any member of the public desiring its services, and while the statute does not specifically set it forth, it would appear that this would be upon the same terms and conditions applied to Nekoosa–Edwards Paper Company—i.e., the cost of such services to any prospective customer would be that only which was necessary to pay for the water plus the amortization of the investment in the canals necessary for distribution of the water. Our position would be otherwise if Nekoosa–Edwards Paper Company were the only customer who had a right to use the water. It is true that at present the canal would serve only Nekoosa–Edwards Paper Company; but we feel that we would be unduly restrictive in our interpretation of the right of eminent domain if we required a utility to have a going business before it laid its first trunk line for the distribution of its product. The testimony here showed without doubt that the canal was to serve as a trunk line not only for Nekoosa–Edwards but for all other customers who might demand service south and west of the river. Under these circumstances we hold that a preponderance of the evidence shows that the proposed use of the canal by the water distribution district is for a public purpose. Nor can we find anything contrary in *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967).

*Hale*, 244 Ark. at 650–51, 427 S.W.2d at 16.

▆▆▆ We conclude, in light of this case law, that section 23–15–101 is not unconstitutional as applied to the facts in the instant case. Section 23–15–101 delegates the power of eminent domain to all pipeline companies operating in this state as common carriers. As common carriers,

the pipeline companies are required by law "to carry for all alike, and not at [their] option." *See Alpha Zeta Chapter of Pi Kappa Alpha Fraternity v. Sullivan*, 293 Ark. 576, 740 S.W.2d 127 (1987) (quoting *Arkadelphia Milling Co. v. Smoker Merch. Co.*, 100 Ark. 37, 139 S.W. 680 (1911)). Thus, section 23–15–101 affords the public the right to enjoy the use of ₁₃a taking pursuant to this section, not by permission, but of right. In other words, "the law gives all the right to use it on equal terms." *Ozark Coal, supra.*

█ Furthermore, it makes no difference that only "a collection of a few individuals" may have occasion to use the pipeline after its completion. Again, the character of a taking, whether public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. *Ozark Coal, supra.* "If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small." *Ozark Coal*, 97 Ark. at 495, 134 S.W. at 634 (quoting *Phillips v. Watson*, 63 Iowa 28, 18 N.W. 659 (1884)). This court has clearly recognized that in determining whether the taking of property is necessary for public use, not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered. *Pfeifer*, 346 Ark. at 460, 57 S.W.3d at 721; *Woollard v. Ark. State Highway Comm'n*, 220 Ark. 731, 249 S.W.2d 564 (1952) (citing *Rindge Co. v. County of Los Angeles*, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923)).

Both the Linders and Midstream look to the Trowbridge affidavit to support their arguments. The Linders, relying on *City of Little Rock v. Raines*, contend that the affidavit evidences only a private use in that only a few individuals will enjoy the use of the pipeline. Our law, as discussed above, is clear on this point. The right of members of the public to use the pipeline to transport natural gas, whether currently or in the future, determines the character of the usage. By exercising the right of eminent domain under section 23–15–101, Midstream has elected to operate its pipeline as a common carrier, giving the public the equal ₁₄right to use the pipeline to transport natural gas. As the Trowbridge affidavit states, there are "several working interests" that will use the pipeline upon completion as well as "multiple other potential working interests (including unleased surface owners who may elect to participate in the drilling of wells in the involved sections)." Should Midstream or its successors at any point deny the use of the pipeline to those having occasion to use it, the condemnation will be revoked. *See St. Louis Iron Mountain & S. Ry. v. Petty, supra.*

The Linders' reliance on dicta from *City of Little Rock v. Raines* is misplaced. That case does not stand for the proposition that the public as a whole must in fact use the taking or in fact have occasion to use the taking. On the contrary, in *Raines*, the court focused on the fact that the industrial park would be *limited* to private industries, and for that reason eminent domain, was not appropriate. The "public-use-in-fact" argument, espoused by the Linders, was rejected by this Court in *Dowling v. Erickson*, 278 Ark. 142, 644 S.W.2d 264 (1983), where we said

> Appellant argues that the right of eminent domain cannot be exercised unless it is in fact for use by the public, citing *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967). The appellant, however, misconstrues the term "public use in fact", as used in that case. In *Raines*, the City of Little Rock had issued revenue bonds and levied taxes pursuant to Amendment 49 and implementing legislation Ark. Stat. Ann.

§§ 19–2702 to –2719 (Repl.1956), and was attempting to condemn property for an industrial park in conjunction with a port authority. We said that cities may exercise eminent domain only as expressly granted by the constitution or statutes and such grants are to be strictly construed against the condemnor. We held that neither Amendment 49 nor implementing legislation delegated to the cities the right of eminent domain for an industrial park. The right must be given for a use that in fact directly benefits the public. The point the appellant makes is misguided. The distinction between public and private use is qualitative—not quantitative. In discussing Ark. Stat. Ann. section § 76–110, the court in *Pippin [v. May]*, *supra* [78 Ark. 18, 93 S.W. 64 (1906) ], states:

> The character of a road, whether public or private is not determined by its length or the places to which it leads, nor by the number of persons using it. *If it is free and common to all citizens, it is a public road though but few people travel upon it.*

*Dowling*, 278 Ark. at 143–44, 644 S.W.2d at 265 (emphasis in original); *see also Hale*, 244 Ark. at 651, 427 S.W.2d at 16 ("Nor can we find anything to the contrary in *City of Little Rock v. Raines*.").

Further, we find nothing inconsistent with our conclusion in the instant case and *Clear Creek Oil & Gas Co. v. Fort Smith Spelter Co.*, 148 Ark. 260, 230 S.W. 897 (1921). The *Clear Creek Oil* case involved a dispute between a natural-gas supplier and its customer over whether the supplier had elected to operate as a public utility under the statute with the right of eminent domain, thus making the contract between the parties subject to public control by the Arkansas Corporation Commission. Those facts are distinguishable. In the instant case, the Trowbridge affidavit makes it clear that Midstream plans to operate its pipeline as a common carrier, giving the public the equal right to use the pipeline to transport natural gas. Accordingly, section 23–15–101 has not granted the power of eminent domain to Midstream for purely private use in violation of our constitution.

We hold that section 23–15–101 is constitutional, as applied to the facts of this case.

Affirmed.