Cite as 2023 Ark. App. 265

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CV-21-629

| | |
|---|---|
| CLIFFORD W. CHRISTIAN AND KAREN D. CHRISTIAN | Opinion Delivered  May 3, 2023 |
| APPELLANTS | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-20-211] |
| V. | |
| SWO PROPERTIES, INC.; CAROL A. NORTON, INDIVIDUALLY; CAROL A. NORTON, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT W. DOMME; CAROL A. NORTON, TRUSTEE, THE ROBERT W. DOMME LIVING TRUST DATED FEBRUARY 1, 2007; AND STEPHANIE SHRINER D/B/A LAKELAND ESCROW TITLE & SERVICES | HONORABLE JOHNNIE A. COPELAND, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants Karen and Clifford Christian appeal from the August 31, 2021, order of the Boone County Circuit Court dismissing the litigation with prejudice in favor of appellees SWO Properties, Inc. ("SWO"); Carol Norton, individually, as personal representative of the estate of Robert W. Domme and as trustee of the Robert W. Domme Living Trust; and Stephanie Shriner d/b/a Lakeland Escrow Title and Services. On appeal, appellants argue that the circuit court erred in (1) dismissing with prejudice the instant case by applying Arkansas Rule of Civil Procedure 56 analysis; (2) dismissing the instant case with prejudice by finding that the order in a previous action was a final

judgment on the merits with the same issues between the same parties; (3) depriving appellants of due process; and (4) denying appellants a full and fair opportunity to be heard before an impartial tribunal. Finding that the doctrine of res judicata bars the instant case, we affirm.

At its core, this is a simple mortgage-default case. On October 25, 2002, appellants Karen and Clifford Christian, husband and wife, purchased a home located at 1267 Hawkins Drive, Harrison, Boone County, Arkansas (the property), from Robert W. Domme via escrow contract for deed ("escrow contract"). Domme, from 2002 through his death in February 2009, was the sole legal and record owner of the property subject to appellants' contract. Domme was also sole owner of separate appellee SWO.

SWO purported to be the successor in interest to Domme's interest, rights, and title in the property and contract. In September 2011, SWO sent a letter to appellants regarding late payments in the amount of $5,414.13. In response, appellants issued a check for the full amount to bring the debt current. On June 13, 2013, following tax default, the property was forfeited to the State of Arkansas Commissioner of Lands (COSL).[1] Again, in October 2013, appellants were substantially behind in payments. Appellants requested additional time to catch up. Consequently, the parties entered into an agreement (addendum to the contract) detailing how the past-due debt would be paid.

Appellants filed for Chapter 13 bankruptcy in December 2013.[2] SWO was listed as the secured party. Appellants filed several motions and an objection to SWO's claim. The objection to

---

[1]The redemption deed of appellants' successful redemption of the property was recorded on April 17, 2019.

[2]Appellants had previously filed Chapter 13 bankruptcy in 2004.

SWO's claim and motion for adequate protection and relief from stay was set for hearing on November 19, 2014. The parties reached an agreement modifying the contract for deed that was filed on November 24, 2014, as an agreed order in appellants' bankruptcy case.

SWO again filed for relief from stay on June 1, 2015, alleging nonpayment under the modified contract for deed. On September 30, the bankruptcy court found appellants in arrears $601.74 and imposed a strict compliance upon appellants and stated that upon an affidavit from SWO, the court would grant relief from stay.

SWO filed a verified motion for relief without hearing on August 2, 2017. Appellants, in turn, filed a motion for contempt and sanctions on August 7. A hearing was held September 13 in which the court granted SWO's motion for relief and denied appellants' motion for contempt and sanctions.

On September 17, an order was entered in the United States Bankruptcy Court, Western District of Arkansas, lifting the stay in appellants' bankruptcy case.

On December 13, SWO filed unlawful detainer against appellants, alleging material breach of agreement with SWO. Appellants filed an answer and motion to dismiss and asserted affirmative defenses. SWO requested and was granted a protective order precluding discovery until pending motions were ruled upon. Following a March 14, 2018, hearing, appellants were ordered to make monthly payments of $622 during the pendency of the action. Beginning August 2018, payments ceased except one payment made in October.

At the July 29, 2019, hearing, the circuit court stated,

> I can't remember how many motions back there is whether that was the issue on one of those motions that I was going to try to do some research on. Quite frankly, I don't have time to do the extensive research that this case would require. I don't have that luxury. I will admit

I am not – I probably am not the Judge who should be hearing this in some respects just because I am getting very, very frustrated with the way this case is proceeding, but I am doing the best I can. Well, I'm ruling that SWO is the real party in interest here. So that's who it goes to.

Regarding appellants' motion to dismiss, the circuit court further elaborated,

We haven't had our hearing on that but at this point, I'm saying let's get the payments made that go to SWO, the original party in interest and I've seen nothing that suggests they're not a proper party in interest. I'm not convinced at this point. In essence, at this point, they are renters from SWO.

On August 5, the court entered a temporary payment order directing appellants to pay the court registry monthly, where funds were to remain until a final hearing on the issues. Also on August 5, appellants filed an amended answer and affirmative defenses against SWO. Appellants also counterclaimed for constructive trust, accounting and return of improper payments, conversion of property, and breach of contract or unenforceable contract.

Without hearing, upon receipt of a fax from SWO requesting eviction and damages due to alleged default pursuant to the payment order, on November 23, 2020, the circuit court entered an order of ejectment and release of rental payments, granting ejectment of appellants from the real property, releasing to SWO the registry funds totaling $10,127.50, and denying "all claims and motions not specifically addressed herein." Appellants filed a motion to reconsider and vacate the order. Appellants did not tender any further payment nor did they move from the property. SWO filed a motion for contempt and failure to vacate.

On September 7, 2020, while the unlawful-detainer action was pending, appellants filed the instant case against SWO for fraud and misrepresentation; declaratory judgment and slander of title; and conversion of property, and they named additional defendants. On August 31, 2021, the circuit

4

court dismissed the second case, the fraud case, with prejudice against all appellees, and denied appellants' motion to consolidate and stay unlawful detainer. Appellants now bring this appeal.

## I. *Standard of Review*

We generally review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff.[3] When the circuit court is presented with documents outside the pleadings, as was done here, we treat the case as an appeal from a summary judgment.[4] The evidence is viewed in the light most favorable to the party opposing the motion.[5] However, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law.[6]

Appellants first assert that the circuit court erred in dismissing the case with prejudice pursuant to the Arkansas Rule of Civil Procedure 56 summary-judgment standard because there were genuine issues of material facts in dispute. Despite the extensive argument presented by appellants on this point, we find it unnecessary. The circuit court's dismissal was based on the application of the res judicata doctrine, not on a determination of whether the facts and evidence presented left material facts in dispute.

## II. *Res Judicata*

---

[3] *Statewide Outdoor Advert., LLC v. Town of Avoca*, 104 Ark. App. 10, 289 S.W.3d 111 (2008).

[4] *Bayird v. Floyd*, 2009 Ark. 455, 344 S.W.3d 80.

[5] *Watkins v. S. Farm Bureau Cas. Ins. Co.*, 2009 Ark. App. 693, 370 S.W.3d 848.

[6] *Linder v. Ark. Midstream Gas Servs. Corp.*, 2010 Ark. 117, 362 S.W.3d 889.

5

The claim-preclusion aspect of res judicata bars relitigation of a claim in a subsequent suit when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; (5) both suits involve the same parties or their privies.[7] Res judicata bars not only relitigation of claims that were actually litigated in the first suit but also those that could have been litigated.[8] When a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.[9] The key question regarding the application of res judicata is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the claim in question.[10]

Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by a court of competent jurisdiction.[11] Res judicata is an affirmative defense that promotes finality in litigation.[12] The purpose of the res judicata doctrine is to put an end to

---

[7]*Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008).

[8]*Linder*, *supra*.

[9]*Id*.

[10]*Id*.

[11]*Beebe v. Fountain Lake Sch. Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006).

[12]Ark. R. Civ. P. 8(c) (2019); *Mason v. State*, 361 Ark. 357, 206 S.W.3d 869 (2005).

litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time.[13]

In its order, the circuit court stated,

There can be no doubt in examining the instant case and the 2017 case that they stem from one transaction for purposes of a res judicata determination. Both cases involve circumstances surrounding the execution of a contract for deed between the Christians and Robert Domme. The 2017 case was pending between the parties for almost three years prior to the filing of the instant action. Additionally in the 2017 case, the Christians filed a counterclaim alleging the same or similar facts as the 2020 case. Each of the separate defendants could and should have been named in that prior litigation. The allegations now couched as tort claims are not new allegations. They were argued extensively in the 2017 case. The difference is now the Christians have added Ms. Shriner as a party. The remaining Defendants have some relation to SWO properties, Inc.

Theoretical res judicata aside, if there are two actions pending between the parties at the same time, the first to reach a final determination will be preclusive with respect to the other. *National Bank of Commerce v. Dow Chemical Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999). Here, the 2017 litigation is absolutely conclusive to bar the Christians claims against SWO Properties, Inc. The 2017 litigation was concluded by Order of the Court on November 23, 2020.

Appellants contend that res judicata does not bar its fraud action against appellees because the factors necessary to establish claim preclusion were not satisfied. Specifically, appellants argue that the circuit court committed reversible error in dismissing the fraud action with prejudice and denying its motion to stay by finding that the order entered in the unlawful-detainer suit was a final judgment on the merits with the same issues between the same parties. We disagree.

As an initial matter, appellants contend that the circuit court erroneously granted appellees' motion to dismiss pursuant to the Rule 56 summary-judgment standard and Arkansas Rule of Civil Procedure 12(b)8. While this is an appeal from a motion to dismiss, the circuit court in its order

---

[13]*Powell*, 375 Ark. 178, 289 S.W.3d 440.

stated, "Since there have been matters outside the pleadings, the Motion to Dismiss will be treated as a Motion for Summary Judgment pursuant to ARCP 56." However, the essence of this appeal concerns the application of the res judicata doctrine. When this court reviews a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law.[14]

Appellants argue that the order entered in the first case was not a final, appealable adjudication on the merits as required for the application of res judicata. Appellants assert that the order in the unlawful-detainer action was a default judgment and not a trial on the merits. For arguments sake, although we do not agree with appellants' contention that the order of ejectment was a default order and not an adjudication on the merits, we hold that it would not bar res judicata application either way. An issue previously resolved by default judgment is barred from relitigation under the doctrine of res judicata because res judicata applies not only to issues that were actually litigated but also to those issues that could have been litigated in the prior lawsuit.[15]

Appellants also challenge the finality of the order entered in the previous suit. An order contemplating further action by a party or the court is not a final, appealable order.[16] Appellants argue that the order is not final because the court "contemplated [a] final hearing on jurisdictional issues and merits at [a] future date." Additionally, appellants contend that the order specifically contemplated further action by stating, "It is further ORDERED that if the subject property is

---

[14]*Daily v. Langham*, 2017 Ark. App. 310, 522 S.W.3d 177.

[15]*Bruns Foods of Morrilton, Inc. v. Hawkins*, 328 Ark. 416, 944 S.W.2d 509 (1997).

[16]*Anderson-Tully Co. v. Vaden*, 2018 Ark. App. 484, 562 S.W.3d 249.

8

damaged, [SWO] is allowed to bring the repairs and costs to the Judge's attention for further action against them." In *Moore v. Moore*,[17] the parties' divorce decree directed them to come to an agreement and, in the event they could not reach an agreement, required them to return to court for an order for the property to be sold by the clerk. The supreme court held that the divorce decree was a final, appealable order because, while it provided an enforceable judicial resolution in the event the parties were unable to reach an agreement in the specified time period, it did not include language *requiring* the parties to return to court for further judicial action. As in *Moore*, the order entered in the first suit between appellants and appellee SWO, was a final, appealable order because it addressed the issues presented by the parties and reserved no issues for later determination. It simply allowed an avenue for judicial resolution if the future need arose. The order decided the rights of the parties and ended the litigation; there were no outstanding issues left undecided. Therefore, the order was final for purposes of appeal even though it provided for alternate resolution.[18]

To the extent appellants argue that the order lacks finality because outstanding motions and issues remained and no writ of possession was ordered, issued, or executed pursuant to Arkansas Rule of Civil Procedure 8(a)12, we find no merit. The order in the unlawful-detainer action stated, "All claims and motions not specifically addressed herein are hereby denied." This served to extinguish all outstanding claims, counterclaims, and pending motions and ended the litigation thus making it a final, appealable order.

---

[17]2016 Ark. 105, 486 S.W.3d 766.

[18]*Davis v. Davis*, 2016 Ark. 64, 487 S.W.3d 803.

Appellants next argue that the circuit court "erred in finding 'transaction' [the] same in both cases." The test in determining whether res judicata applies is whether the matters presented in a subsequent suit were necessarily within the issues of the former suit and might have been litigated therein.[19] When the case at bar is based on the same events and subject matter as the previous case and only raises new legal issues and seeks additional remedies, the case is barred by res judicata.[20]

Appellants assert that the first suit simply involved "whether SWO has superior rights over those of appellants to possess the property." They further urge that this case involves new claims that ripened as "facts" were admitted during hearings in the first case, including lack of assignment, title defects, poor estate planning, and whether heirs were true owners. As found by the circuit court, both cases involve circumstances surrounding the execution of a contract for deed between appellants, the Christians, and Robert Domme. While the first case was an action for unlawful detainer and the second case, the one currently before this court, listed causes of action for declaratory judgment; conversion and constructive trust and accounting; fraud, misrepresentation, and deceit; and breach of escrow and fiduciary duty, both suits stem from, and are traced back to, the contract for deed executed in 2002 by the Christians and Domme for the property located in Harrison, Arkansas. Here, it is clear that the second action, although not identical, was based entirely on the same events and subject matter as the previous case, and the additional issues and allegations contained in the second suit were either alleged in appellants' previous counterclaim or could have been litigated in the prior proceeding.

---

[19]*Am. Standard v. Miller Eng'g*, 299 Ark. 347, 772 S.W.2d 344 (1989).

[20]*Id.*

Appellants also contend that the application of the res judicata doctrine to the second case was erroneous because the parties in the two cases are not identical nor are the new parties privies of SWO. The parties need not be precisely the same for a judgment in one action to bar another, as long as there is a substantial identity, and the same claim is at stake.[21] Privity of parties within the meaning of res judicata means a person is so identified in interest with another that he represents the same legal right.[22]

In the previous round of litigation surrounding the contract for deed executed between the Christians and Domme, separate appellee SWO was the plaintiff, and appellants, the Christians, were the defendants. In the case at bar, the Christians were the plaintiffs, and SWO was named as a defendant as were Carol Norton, individually; Carol Norton as personal representative of the estate of Robert Domme; Carol Norton as trustee of the Robert Domme Living Trust; and escrow agent Stephanie Shriner d/b/a Lakeland Escrow Title and Services. Appellants assert that only SWO was an identical party sufficient to apply res judicata. We disagree. The exact same parties are not required since it is sufficient if there is substantial identity of the parties.[23] Carol Norton, as owner and president of SWO, undoubtedly has a direct relationship with and substantial identity to SWO and represents the same legal right. Further, this remains true for all the capacities in which Carol Norton was named as defendant in the case.

---

[21]*Van Buren v. Ark. Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002).

[22]*Winrock Grass Farm v. Affiliated Real Estate Appraisers of Ark., Inc.*, 2010 Ark. App. 279, 373 S.W.3d 907 (2010).

[23]*Wells v. Ark. Pub. Serv. Comm'n*, 272 Ark. 481, 616 S.W.2d 718 (1981).

Appellants argue that escrow agent Shriner "clearly" shares no privity status with SWO; therefore, res judicata does not bar litigation of claims against Shriner. As already stated, the parties need not be precisely the same for a judgment in one action to bar another, as long as there is a substantial identity and, as in the present case, the same claim is at stake.[24]

We hold there is substantial identity between SWO and escrow agent Shriner. In the complaint below, pertaining to the claim of breach of escrow and fiduciary duty, appellants alleged, in part, the following:

83. Defendant [Shriner] had fiduciary duty of fairness and reasonable care to Plaintiff's regarding her (i) receipt, control and proper distribution of the Payments intended for Seller Domme; (ii) securing the Escrow Originals in Escrow File HEC 4864 until Contract completed; receipt of written consent of parties; or Court Order; (iii) proper accounting from receipt of Payments to final distribution; (iv) disclosure of material information and changes affecting Escrow Account (i.e. Seller Domme's death and consequences thereof; changes to entity preparing statements, handling or receiving Payments; release of Escrow File HEC 4864 to Defendant SWO and Defendant Norton; title issues affecting Property and parties to Contract; unfair communications with Defendants regarding Escrow Account; cessation of duties as Independent Escrow Agent); and (v) qualifications and licensing status.

84. Defendant [Shriner] breached such duty by (i) failure to send timely and proper notices to Plaintiff's Seller Domme's death; resulting changes to Escrow Account and Contract; and evidence of any lawful successor in interest thereto; (ii) failure to fairly and accurately provide an accounting of the Payments including disclosure of the ultimate recipient and/or beneficiary of same and authority to receive same; (iii) unfair and improper distribution of Payments and release of Escrow File HEC 4864 to Defendants that were not legal assignees or heirs; (iv) unfairly and secretly assisting Defendants by providing access to, and release of Escrow File HEC 4864, facilitating Defendants recording of Escrowed Quitclaim Deed, Plaintiff's consent and without Court Order; (v) failure to use reasonable care and fairness in handling and securing the Payments and Escrow File HEC 4864 for Plaintiffs, resulting in unfair advantage to Defendants; (vi) refusing to communicate with Plaintiffs by failure to respond to multiple letters and contacts requesting information regarding agent's status and Escrow Originals and File.

---

[24]*Van Curen v. Ark. Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002).

85. Such release of Escrow Originals, including Escrowed Quitclaim Deed unfairly prejudiced Plaintiffs and unjustly enriched Defendant SWO's interest as purported record title holder to the property.

86. Defendant SWO and Norton Defendants also had a fiduciary duty to fairness and reasonable care relating to the handling and securing of Payments made to Defendant [Shriner] intended for Seller Domme; and in securing Escrow Originals in Escrow File 4864, including Escrowed Quitclaim Deed.

87. Defendants, or any one or more of them acting in concert, breached such fiduciary duty by converting Escrow File HEC 4864 and secretly removing and recording Escrowed Quitclaim Deed; by improper handling or distributing the Payments; retention and use by improper recipient; failing to notify Plaintiffs of Seller Domme's death; failure to administer the account; and wrongful conversion of such Payments.

Appellants manifestly allege that appellees, SWO, Norton, and Shriner, worked together to defraud appellants for the benefit of SWO. In the previous case, in its counterclaim to the unlawful-detainer action, appellants alleged the same facts: that they submitted the payments to the escrow agent in good faith on the reasonable belief that they were being delivered to the proper recipient; such payments were made in trust and in reasonable reliance that the proceeds would be properly disbursed to Domme or the proper heirs; SWO misrepresented or concealed Domme's death and continued to receive and retain payments for SWO's own use or gain; SWO's actions in concert with others to prepare, sign, and record the quitclaim deed are an unlawful conversion of title and property; and SWO's actions in concert with others to secretly remove the escrowed quitclaim deed from escrow and to record same on April 19, 2019, are an unlawful conversion of title and property. Plainly, appellants alleged the same facts in the prior proceedings—that escrow agent Shriner conspired with SWO and Norton to defraud appellants regarding escrow documents and payments made concerning the property at the core of the unlawful-detainer action and now the fraud action. It has been recognized that coconspirators are privies for purposes of res judicata where, as in this

case, the alleged conspirator's existence and actions were known to the plaintiff during the prior litigation. The circuit court correctly barred appellants' claims against Shriner pursuant to res judicata.

### III. *Remaining Issues*

Appellants next argue they were denied their constitutional rights of due process and rights to acquire, possess, and protect their property by the circuit court's ordering a taking of their property without first affording appellants a full and fair hearing on the merits or an opportunity to confront and cross-examine appellees. Appellants assert that in an unlawful-detainer action, pursuant to Arkansas Rule of Civil Procedure 45, defendants are entitled to present evidence of witnesses or production of documentary evidence at trial. Appellants contend they were precluded from discovery due to SWO's protective order and were denied a final hearing on the merits, both of which were in violation of appellants' rights to a fair trial and to confront adversaries. Appellants claim they "are entitled to a reversal of the instant dismissal with prejudice and a return of their property and funds erroneously released to SWO" in the first case. The arguments advanced by appellants stem from the first case, the unlawful-detainer action, not the second case alleging claims of fraudulent misrepresentation, which is the case at bar. Appellants failed to appeal from the order entered in the first case and now attempt to gain another opportunity to do so by way of the fraud case. Appellants not only failed to appeal from the order entered in the unlawful-detainer action, but the due-process arguments advanced in this appeal were also not raised in either case and consequently are not preserved for appellate review.

Appellants also argue they were denied the right to impartiality and a full and fair opportunity to be heard without bias. Appellants make several claims of "potential bias" and favoritism exhibited

toward appellees by the circuit court in its rulings on motions and requests made by the parties. However, as in the previous point, these arguments relate to the unlawful-detainer case, which is not the case currently before us. Again, appellants argue points that should have been raised in the first case and the appeal thereof. Their failure to do so in the time and manner required does not allow them to use the second case as an avenue for relief from the order entered in the first case.

IV. *Conclusion*

Our review of the record reveals that, perhaps in the original action, which was the unlawful-detainer suit, the circuit court, after three years, had become frustrated with the parties and the issues and gave short shrift to the proceedings. However, the manner in which the court disposed of the case did not affect finality. The amended order of ejectment and release of rental payments that was filed on November 23, 2020, determined the rights of the parties and found that SWO was the real party in interest. Furthermore, the order disposed of all remaining motions and claims thereby becoming a final, appealable order, which appellants did not appeal. This second suit, which alleged fraud and other various causes of action, is an attempt to breathe new life into a dead case. Appellants' effort to couch the claims as different issues and adding parties does not change the fact that both cases emanate from the same transaction. Tacking on new claims and additional parties does not validly serve to resuscitate or renew the first suit. This court, although sympathetic, does not have the authority to disturb a final, appealable judgment that appellants did not appeal from.

> The doctrine of res judicata is accepted as a rule of inflexible absolute law in practically every jurisdiction. If the judgment is entitled to res judicata, it is conclusive as to the cause of action involved no matter how "unfair" or "patently erroneous" it may seem to the court examining the judgment. 65 Harv. L. R[ev]. 818 [1952]. There must be an end to litigation at some point; and, if there has been one fair trial on the merits of a case, that is all that is required.

*Wells v. Heath*, 269 Ark. 473, 480, 602 S.W.2d 665, 668 (1980).

In light of the foregoing analysis, appellees were entitled to judgment as a matter of law, and the circuit court correctly found that res judicata bars appellants' claims in the second suit.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Teresa J. Olson*, for appellants.

*Watson Law Firm of Harrison*, by: *Rick E. Watson*, for appellees.