PHILLIPS v. WATSON.

1. **Injunction:** NOT ALLOWED WHERE THERE IS LEGAL REMEDY: RIGHT OF WAY TO COAL MINE. Chapter 34 of the laws of 1874, authorizing the establishment of public ways to lands having stone and mineral thereon, provides for the right of appeal from the award of the commissioners to the circuit court of the proper county. This right of appeal is an adequate remedy at law for all objections on the part of the one whose land is taken, based upon irregularities in the proceedings and the inadequacy of the damages awarded; and, on account of such objections, an injunction will not be granted restraining the use of the way condemned.

2. **Right of way to Mineral Lands:** PUBLIC HIGHWAY: ACT PROVIDING FOR NOT UNCONSTITUTIONAL. A road or way established under chapter 34, laws of 1874, over the land of another, to connect a mine or quarry with a railroad or highway, is a *public* way, in the sense that the public may use and enjoy it in the way in which roads and highways are ordinarily used by it, and that the mine-owner who procures it to be established must use the special privilege which the act confers on him in such manner as not to destroy this right of the public, or prevent its enjoyment. It follows, therefore, that said act is not in conflict with those provisions of the constitution of the United States, and of the state of Iowa, which prohibit the appropriation by law of private property to private use.

3. ————: PRIVATE RIGHTS OF LAND-OWNER EXTINGUISHED BY CONDEMNATION. The owner of land over which a public way is established, under chapter 34, acts of 1874, from a mine to a railroad or highway, must be presumed to be compensated for his damages by an award of the commissioners, from which he does not appeal, and thereafter his right to use the way thus established is no greater than that of any other citizen; and the fact that he is thus cut off from utilizing mineral lands of his own, is no ground for the interference of equity by injunction to restrain the use of the way for the purposes for which it was established.

4. **Injunction:** PRACTICE: DISSOLUTION UPON DENIAL OF EQUITIES. Where a temporary injunction has been granted upon a petition, the equities of which are fully denied in the answer, it is proper practice to dissolve the temporary injunction and to defer the determination of petitioner's right to an injunction until after a final hearing upon the issues joined.

*Appeal from Monroe District Court.*

TUESDAY, MARCH 18.

IN the month of August, 1882, defendant, being in possession as lessee of a tract of land on which he was engaged in operating a coal mine, instituted a proceeding, under the provisions of chapter 34 of the acts of the Fifteenth General Assembly, to have a public way established from a point on the Chicago, Burlington & Quincy Railway, over and across certain lands belonging to plaintiff, to his coal mine; and he gave notice of his intention to construct and maintain a railway on such way for the purpose of reaching the mines on said tract of land, and of transporting the product thereof to market.

The sheriff of the county appointed six freeholders of the county to inspect the real estate of plaintiff and assess the damages which he would sustain by the appropriation. These appraisers met at the time appointed, inspected the premises, and assessed plaintiff's damages at $100; which amount defendant paid to the sheriff, and entered on the premises, and commenced the work of constructing on said way the grade for a railway.

The plaintiff thereupon instituted this suit, for the purpose of having said condemnation proceeding declared null and void, and of enjoining defendant from constructing said grade, or occupying said proposed way with a railway, or for any other purpose. Plaintiff's petition was presented to the judge of the district court in vacation, who thereupon made an order for the issuance of a temporary injunction. After the writ was served on him, defendant filed his answer, also a motion to vacate the order allowing the temporary injunction, and this motion was also heard by the judge in vacation, being submitted on the pleadings and affidavits filed by the parties. The motion was sustained by the judge, and from the order sustaining the same plaintiff appeals.

*Lafferty & Johnson*, *Perry & Townsend* and *F. M. Davenport*, for appellant.

*James Cone* and *Sloan, Work & Brown*, for appellee.

REED, J.—I. Many separate objections are urged by plaintiff against the condemnation proceedings under which

1. INJUNC-
TION: not al-
lowed where
there is legal
remedy; right
of way to coal
mine.

defendant claims the right to occupy the ground in question. But we think we may properly classify all these objections as relating either, 1st, to the mere regularity of the condemnation proceedings, or, 2d, to the right to condemn the ground at all for the purposes intended by defendant. The objections which we think relate merely to the regularity of the proceedings are, that one of the appraisers appointed by the sheriff, and who acted in assessing the damages, was not qualified to act as such appraiser—being interested in a like question; that defendant's attorney was present with the appraisers when they were inspecting the premises, and made certain statements to them with reference to matters involved in the inquiry; and that the damages awarded by the jury were grossly inadequate.

We dispose of all this class of objections with the suggestion that the matters involved in them do not afford the plaintiff any ground for relief in equity. The statute under which the proceedings were had gave him the right of appeal to the circuit court of the county, where he could have had the damages which he would sustain by reason of the appropriation determined as in an ordinary action, and in this right of appeal he had an adequate remedy against any irregularities that may have occurred in the proceedings, or any injustice which may have been done him in the award; and, as he had personal notice of the proceedings, we think this remedy is exclusive as to all such matters.

II. The first objection urged against the right to appropriate the land to the use intended is, that the statute under

2. RIGHT OF
way to mine-
ral lands:
public high-
way: act pro-
viding for not
unconstitu-
tional.

which the appropriation was sought to be made is in conflict with the constitution both of the United States and of this state. The act in question is chapter 34 of the Acts of 1874. It is entitled "An act authorizing the establishment of public ways to lands having stone and mineral thereon;" and it provides that any person owning or being in possession as lessee of any lands having any coal, stone, lead, or other mineral thereon or thereunder, may have a public way established over the lands of others, from any railroad or highway, to any mine or quarry on said lands. It also provides that in case the owner of any lands necessary to be taken for such purpose refuses to grant the right of way, or if the person seeking to have such way established and the owner of such lands cannot agree upon the compensation to be paid therefor, the sheriff of the county shall appoint six freeholders of the county, who shall inspect the premises, and assess the damages which the owner of the land sought to be appropriated will sustain by reason of the appropriation thereof. The damages so assessed, and all costs of the proceeding, are to be paid by the person seeking to have the way established; and, if the way, when constructed, passes through enclosed lands, he is required to fence it on both sides. And it is provided in the 4th section of the act, that any person who has paid the damages assessed for a highway established under the act may construct and maintain a railway thereon, for the purpose of reaching and operating his quarry or mine, and of transporting the product thereof to market.

The act does not make any provision for the expenditure of public money, or of labor, under the direction of public officers, in the improvement or repair of the ways which may be established under its provisions. Nor is there any provision in the act in any manner defining the rights or privileges of the public with reference to the roads so established.

The specific objection to the act is that, inasmuch as it provides for the establishment of a way only in case the mine-

owner shall make application therefor, and imposes on him the burthens incident to its establishment and maintenance, and confers on him the exclusive right to use it in a manner entirely different from that in which public highways ordinarily are used, and which necessarily has the effect in a great degree to exclude the public from its use, the use to which it appropriates the ground taken for right of way is a mere private use.

It is not claimed by any that the state can appropriate the property of the citizen, without his consent, to any other than a public use. The signification of the term public use has, however, been the subject of much discussion, and there is still room, doubtless, for difference of opinion as to its meaning. We do not propose, however, to enter this field of discussion further than may be necessary for the determination of the case before us.

If the purpose and effect of this statute were to confer on the mine-owner the exclusive right to occupy and use the ground appropriated, for the purpose of reaching and developing his mine, and of transporting the product thereof to market, and the only rights intended to be conferred on the public are such advantages and conveniences as may accrue to it incidentally from the developing of the mine and the marketing of the product, we would have no hesitancy in holding that it could not be sustained; for, in that case, the use to which the property appropriated would be put would be essentially a private use.

We think, however, that this was not the purpose of the legislature in enacting the statute, and that it does not have this effect. We ought not to declare any act of the legislature void, if a construction can fairly be put upon it under which it can be sustained. In the title, as well as in the body of the act, the ways for the establishment of which it provides are described as public ways, and the legislature must be presumed to have intended that they should be public ways, in the ordinary sense in which that term is used; that is, that

the public should have the right to use, occupy and enjoy them as ways or roads. It is not material that the rights and privileges of the public with reference to them are not specially defined in the act, for the rights and privileges of the people generally with reference to public highways are defined in the general statutes on the subject. Neither is it material that no special provision is made in the act for the improvement of such ways, or for putting them in condition for public use at public cost. The authority for making such improvements could probably be found in the general statutes which govern the subject, if there should be occasion for its exercise. And we think that it makes no difference that the mine-owner may be the only member of the public who may have occasion to use the way after it has been established. The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small. And, where the use to which property is appropriated is a public use, the legislature is the judge of the expediency of making the appropriation, and its action in making the appropriation cannot be questioned in the courts. *Bankhead v. Brown*, 25 Iowa, 540, and cases there cited.

We conclude, therefore, that a road or way established under the provisions of this statute is a public way, in the sense that the public may use and enjoy it in the way in which roads and highways are ordinarily used by it, and that the mine-owner who procured it to be established must use the special privileges which the act confers on him, in such manner as not to destroy this right of the public, or prevent its enjoyment. While the constitutionality of the act was not questioned in *Jones & Price v. The Mahaska Coal Company*, 47 Iowa, 35, the conclusion that it is constitutional follows necessarily from what was held in that case, viz., that the use to which the property condemned is appropriated is a public use.

III. The next objection urged by plaintiff against the right to appropriate the land in question to the use intended

3. ——: private rights of land-owner extinguished by condemnation.

is, that he, and other persons associated with him, own some eight hundred acres of coal land in the immediate vicinity of the tract occupied by defendant, and that he purchased the land over which the way in question is located for the purpose of constructing thereon a railway from the Chicago, Burlington & Quincy Railroad to his coal land, and with the intention of developing coal mines thereon, and of transporting the product of such mines to market, and that the way in question, as located, occupies the only available route for a railway between said lands and the track of the C., B. & Q. Railroad, and that the construction of a railway on said way by defendant will have the effect to exclude him from the enjoyment of the benefits and advantages which he had in view when he purchased the land; and it is argued in his behalf that, having purchased the land for this specific purpose, it would be against equity to allow the defendant now to appropriate it to a like use for his own personal benefit.

It seems to us, however, that the argument in support of this objection assumes that, notwithstanding the appropriation of the land, plaintiff retains the right to construct and maintain a railway over it. But this assumption cannot be allowed. The appropriation, as we have seen, was made by the authority of the state, and in the exercise of its right of eminent domain. All private property within the jurisdiction of the state is held subject to this right. When the exigency arises which calls for the exercise of this right, the state, restrained only by the limitations in the constitution, may appropriate to the public use any or all of the property of any citizen, and, when such appropriation is made, the citizen from whom the property is taken retains only such rights and privileges with reference to it as are enjoyed by members of the general public, unless the law under which the appropriation is made, or some other law of the state,

Phillips v. Watson.

reserves to or confers on him some special right or privilege with reference to it. Now, it cannot be claimed that there is any statute of this state which confers upon plaintiff the right to construct or maintain a railway over the land in question, after it has been appropriated to the use of the public as a highway, and consequently the occupation of such way by defendant for a railway will invade no private right of his.

IV. Finally, it is urged that defendant did not act in good faith in procuring the establishment of said way; that there is but a small quantity of coal on the land occupied by him; and that his object in procuring the location of the way; and in occupying it with a railway, is not to transport his own coal to market, but to exclude plaintiff from the use of the ground as a route for transporting his coal to market, and by that means compel him to purchase his (defendant's) mine and railway at an exorbitant price. It is doubtless true, that the courts of the state will not permit the statute in question to be made use of as a means of extortion, or as an instrument of oppression. No man should be permitted to avail himself of its provisions, or to enjoy the privileges which it confers, except in furtherance of the very objects which the legislature had in view when it was enacted.

4. INJUNC-TION: practice: dissolution upon denial of equities.

But defendant in his answer denied these allegations, and the judge of the district court held, as we understand, that, the equities of the petition in this respect being denied, the temporary injunction would be vacated as a matter of course, while the question involved in the issue would be determined on the final hearing; and we think this is the correct practice. The order vacating the temporary injunction is

AFFIRMED.