OZARK COAL COMPANY *v.* PENNSYLVANIA ANTHRACITE RAILROAD COMPANY.

Opinion delivered February 6, 1911.

1. EMINENT DOMAIN—PRIVATE USE.—The right of eminent domain cannot be exercised for the purpose of acquiring property for private use. (Page 499.)

2. SAME—PUBLIC USE QUESTION FOR COURTS.—It is a judicial question for the courts to determine whether a particular use for which private property is about to be taken under legislative sanction is a public one. (Page 499.)

3.   SAME—WHEN RAILROAD PUBLIC.—Although the principal object in constructing a certain railroad may be the development of the coal mine of a certain corporation, yet, if the public has the right to use the railroad for shipping purposes, the railroad is a public highway and entitled to exercise the power of eminent domain.   (Page 500.)

Appeal from Johnson Chancery Court; *Jeremiah G. Wallace,* Chancellor; affirmed.

*George O. Patterson,* for appellant.

Private property cannot be taken against the owner's consent for private use.   Art. 2, § 22, Const.; 1 Lewis, Eminent Domain (2 ed.), § 157; Cooley's Const. Lim. (6 ed.), 651; 17 N. H. 47; 42 Ga. 500; 35 Col. 593; 14 Minn. 365; 15 Md. 240; 30 Ind. App. 557; 63 S. E. 880; 81 N. E. 1005; 60 Me. 290; 57 Ark. 359; 76 Ark. 245.

The definition of "public use" as synonymous with public interest or advantage, found in the decisions of Utah, Nevada and other mining States of the West, is justified by the courts rendering these decisions upon the ground that mining is the permanent industry in those States; but those decisions are criticised by the ablest authorities on the subject of eminent domain, and are disapproved by a majority of decided cases.   1 Lewis, Eminent Domain (2 ed.), § 165; 101 Md. 247; 149 Fed. 568.

A public use means a use by the public, and incidental advantage, profit or convenience to the people or State are not sufficient to authorize the exercise of the power of eminent domain. 50 S. W. (Tenn.) 744; 86 S. W. (Tex.) 11; 51 S. E. (N. C.) 932; 104 S. W. (Ky.) 762; 107 N. W. (Minn.) 405; 74 Pac. (Wash.) 681; 61 Atl. (Me.) 78; 51 S. E. (S. C.) 485; 68 N. E. (Ill.) 522; 52 Ind. 16; 41 N. J. Law 175.

*Moore, Smith & Moore,* for appellee.

Appellee was organized under authority of Act 163, Acts 1905, approved April 13, 1905, section 2 of which provides that corporations provided for by the act "shall be governed by the laws governing railway corporations in this State," and gives to them after incorporation the right of eminent domain for the purpose of acquiring right-of-way, etc.   By the terms of the act such corporations, when organized, become common carriers subject to the same duties and regulations as are applicable to other railroads in this State.   See Act; Kirby's Dig., § § 6722,

6725, 6730, 6732, 6802, 6804. The act is constitutional, and appellee's railroad, being organized under it and subject to a right of public use, may exercise the power of eminent domain, even though there may be little or no occasion at present for the exercise by the public of the right to use it. Lewis, Eminent Domain (3 ed.), § 251; 42 Mo. 283; 47 N. J. L. 43; 51 L. R. A. 936; 42 Mo. 279; 63 Ia. 28; 101 Md. 247; 16 Mont. 523; 1 Lewis, Eminent Domain (3 ed.), § § 263, 264; 40 Pa. St. 377; 84 Pa. St. 90; 57 Ark. 359, 365, 366, 367, 368.

2. The term "public use" should receive a broader meaning than contended for by appellant, and, as applied to the right of eminent domain for mining and manufacturing purposes, should be construed to mean that which tends to build up and develop the great mining and manufacturing interests of the State at large, and consequently to promote public welfare of the State or any part of it, and of the communities therein. "Public use" is in a large sense a relative term, and may as consistently be said to be synonymous with public advantage or necessity as with the more restricted sense of the actual right of public use. 31 L. R. A. (Mont.) 298; 12 Pick. (Mass.) 467; 16 Gray (Mass.) 426; 33 Conn. 532; 1 N. J. Eq. 694; 56 N. H. 386; Washburn on Easements 326; 11 Nev. 408; 59 Ga. 419; 28 Utah 215; 75 Pac. 371; 26 Pac. 376; 164 U. S. 112; 146 Fed. 680.

McCULLOCH, C. J. The General Assembly of 1905 passed an act entitled, "An act to authorize coal and other mining corporations in the State of Arkansas to construct, own, and operate short connecting lines of railway or tramway, and granting to them the right of eminent domain in condemnation suits."

The act reads as follows:

"Section 1. That all persons owning or controlling by lease or purchase any copper, lead, zinc, iron, marble, coal or other mineral lands in this State shall have the same right to incorporate, own, construct and operate such short lines of railway or tramway as may be necessary to the successful mining and marketing of said coal, marble, and minerals.

"Section 2. All incorporations herein provided for shall be governed by the laws governing railway incorporations in this State, and shall have the same right to acquire right-of-way

over, under or through any private or public lands, and shall have and exercise the same right of eminent domain in acquiring such right-of-way; and shall have the same authority to construct, own, lease, operate or sell such lines of railway or tramway, as may be necessary to the successful mining and marketing of such coal and other minerals, owned or controlled by said mining corporations, as is now by law granted to railroad corporations of this State.

"Section 3. That, when so incorporated and constructed, such short lines of railway and tramway shall be and are hereby entitled to all the rights, powers and privileges of a common carrier.

"Section 4. All such short lines of railway, or tramway, shall have the same rights and privileges of connections, crossings, sidings, switches and transfer, without prejudice or discrimination, as are extended by custom or granted by law to railroad corporations in this State.

"Section 5. That all such short lines of railway, or tramway, not exceeding six miles in length, shall not be required to maintain passenger equipment, but if, at their option, they carry passengers, they shall be subject to the laws governing passenger traffic on railroads in this State." (Acts 1905, c. 163.)

Pursuant to the authority of said act, and in accordance with the procedure prescribed by the general statutes of the State for incorporating railroad companies, appellee was duly incorporated as a railroad company for the purpose of constructing and operating a short line of railroad from the coal mine of the Pennsylvania Anthracite Coal Company to the line of the St. Louis, Iron Mountain & Southern Railway Company. The stockholders in appellee company are the same as those of the above named mining company. Appellee then leased to the St. Louis, Iron Mountain & Southern Railway Company for a term of 30 years its said line of railroad to be constructed, and said lessee agreed in the contract to operate and keep in public use the said railroad, with such locomotives, cars, rolling stock, etc., as it shall deem to be necessary, reasonable or proper for the accommodation of the business of the railroad so as to comply with the laws of the State of Arkansas. The contract requires appellee, as lessor, to maintain the railroad in good condition

and repair, and gives the lessee the right to control the operation
of the road, to regulate the rate of tolls to be charged for trans-
portation of freight and to charge and collect the same.    The
contract contains other provisions unnecessary to mention.

Appellee filed in the circuit court of Johnson County its
petition for the condemnation of a right-of-way across lands
owned by appellants.

Appellants answered, denying the right of appellee to con-
demn, upon the ground that the said road was purely a private
enterprise, that it was not to be built for the use of the public,
that the incorporators of the railroad company were the owners of
the coal company; that their only object and purpose was to build
a spur or switch track to their mines; that they were seeking to
take and appropriate the private property of the appellants for
a purely private purpose; and further that the act of the Legis-
lature, approved April 13, 1905, granting the right of eminent
domain to coal companies is unconstitutional; and praying that
the cause be transferred to the chancery court.    The circuit court
made an order transferring to the chancery court, and in the
order transferring to the chancery court made an order tem-
porarily restraining appellee from building upon the lands of
appellants until such time as the appellants could apply to the
chancery court for an order restraining them from entering into
or upon the lands of appellants until the matters could be
tried finally.    Subsequently appellants petitioned the chancery
court for an injunction, which was refused; an order was made
permitting the appellee, upon the payment of the sum of one
hundred and fifty dollars, to enter into and upon the lands of
appellants and proceed with the construction of the railroad.
From an adverse final decree appellants brought the case here
for review.

In the outset the general principle declared by our Con-
stitution may be stated that the right of eminent domain can
not be exercised for the purpose of acquiring property for pri-
vate use, and that the Legislature cannot exercise the power
of eminent domain nor delegate its exercise except for public
purposes. It is, too, a judicial question for the courts to deter-
mine whether a particular use for which private property is

about to be taken under legislative sanction is in fact a public use. *Mountain Park Terminal Co.* v. *Field,* 76 Ark. 239.

It will be observed that the act of 1905 does not attempt to limit the use to which the railroad may be put, though it authorizes the construction and operation of such short line of railway or tramway "as may be necessary to the successful mining and marketing of said coal, marble and minerals." On the contrary, it is clear from the terms of this statute that, when so incorporated, such lines of road become public carriers subject to the general statutes of the State governing railroads.

The evidence in the case shows that the road is constructed and is to be used principally in developing and operating the coal mine of the Pennsylvania Anthracite Coal Company, yet that is not the sole use. The coal mine of appellants is on the line of the road, and the owners thereof can, under the law, have the use of the railroad as a common carrier for the transportation of coal and other commodities. The evidence also shows that a townsite is being laid out and a town is to be established at one terminus of the railroad, and that the road can be used for shipping purposes by those who may have business there. Other coal mines in that belt may use the road. The law gives all the right to use it on equal terms.

In *Railway Co.* v. *Petty,* 57 Ark. 359, Chief Justice COCKRILL, speaking for the court, said:

"If it is an aid in facilitating the business for which the public agency is authorized to exercise the power to condemn, or if the public may enjoy the use of it not by permission but by right, its character is public. When once the character of the use is found to be public, the court's inquiry ends, and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user. * * * There are numerous cases holding that a railway built for the purpose of reaching a coal mine or a manufacturing establishment is a public enterprise entitled to exercise the power of eminent domain, provided the public has the right to use it. That right makes the use public."

In the case of *Phillips* v. *Watson,* 63 Iowa 28, the court construed a statute of that State authorizing the owner of any

lands having thereon coal, etc., to condemn land for a public way to any highway or railroad, and said:

"We ought not to declare any act of the Legislature void if a construction can fairly be put upon it under which it can be sustained. In the title as well as the body of the act the ways for the establishment of which it provides are described as public ways, in the ordinary sense in which that term is used; that is, that the public should have the right to use, occupy and enjoy them as ways or roads. It is not material that the rights and privileges of the public with reference to them are not specially defined in the act, for the rights and privileges of the people generally with reference to the public ways are defined in the general statutes on the subject. * * * And we think that it makes no difference that the mine owner may be the only member of the public who may have occasion to use the way after it has been established. The character of the way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small. And, where the use to which the property is appropriated is a public use, the Legislature is the judge of the expediency of making the appropriation, and its action in making the appropriation cannot be questioned in the courts."

There are many other cases to the same effect. *Kansas & T. Coal Railway* v. *Northwestern Coal & Mining Co.* (Mo.), 51 L. R. A. 936; *Dietrich* v. *Murdock,* 42 Mo. 279; *De Camp* v. *Hibernia Rd. Co.,* 47 N. J. L. 43; *New Central Coal Co.* v. *George's Creek Coal & Iron Co.,* 37 Md. 557; *Butte, A. & P. Ry. Co.* v. *Montana Union Ry. Co.,* 16 Mont. 523.

We do not have to go as far in this case as some of the courts have done, holding that the operation of a coal mine or manufacturing plant constitutes a public necessity or enterprise, is of itself a public use which may justify the exercise of the right of eminent domain. *Butte, A. & P. Ry. Co.* v. *Montana Union Ry. Co., supra; Olmstead* v. *Camp,* 33 Conn. 552; *Talbot* v. *Hudson,* 16 Gray (Mass.) 426; *Amoskeag Mfg. Co.* v. *Head,* 56 N. H. 386; *Dayton Mining Co.* v. *Seawell,* 11 Nev. 408; *Hand Gold Mining Co.* v. *Parker,* 59 Ga. 419; *High-*

*land Boy Mining Co.* v. *Strickley,* 28 Utah 215; *Miocene Ditch Co.* v. *Jacobsen,* 146 Fed. 680.

Without invoking the doctrine of those cases, we think that the act in question authorizes the incorporation of a railroad for public use, that the public has a right to its use, and that the evidence in this case shows that appellee's railroad is intended for public use, within the meaning of the law.

The decree is therefore affirmed.