2010 Ark. 256

**Carroll W. SMITH and Lorene R. Smith, Appellants,**

v.

**ARKANSAS MIDSTREAM GAS SERVICES CORP., Appellee.**

No. 09–1186.

Supreme Court of Arkansas.

May 27, 2010.

Donald Paul Raney, Searcy, for Appellant.

Daniel C. Brock, Searcy, Jerry Lee Canfield, Fort Smith, for Appellant.

ROBERT L. BROWN, Justice.

Appellants Carroll W. Smith and Lorene R. Smith appeal from a White County Circuit Court order finding that Appellee Arkansas Midstream Gas Services Corporation (Midstream) had the authority to exercise the power of eminent domain over the Smiths' land in order to construct and maintain a natural gas pipeline. The Smiths present several issues on appeal. We affirm the order of the circuit court.

Midstream is an Arkansas pipeline company presently engaged in a project to construct a pipeline for natural gas transmission across certain lands in White County. It is a wholly-owned subsidiary of Chesapeake Energy Corporation. The Smiths are the owners of real property located in Section Seven (7), Township Eight (8) North, Range Eight (8) West, White County.

In 2007, Midstream attempted to negotiate a right-of-way agreement with the Smiths for the purpose of constructing and maintaining a natural gas pipeline across the Smiths' land. After the negotiation proved unsuccessful, Midstream petitioned the White County Circuit Court on January 4, 2008, to assert the power of eminent domain over a sixty-foot right of way across the Smiths' land under the authority of the Public Utilities Code (Arkansas Code Annotated sections 23–15–101) and the Eminent Domain Code (Arkansas Code Annotated 18–15–1303). On January 15, 2008, the Smiths moved to dismiss Midstream's eminent-domain action and alleged that Midstream did not have the authority to exercise the right of eminent domain because: (1) Midstream was seeking to exercise that right to acquire property for private, rather than public, use in violation of the Arkansas Constitution; (2) section 23–15–101 was unconstitutionally vague; (3) section 23–15–101 was incompatible with the Arkansas Constitution; and (4) section 18–15–1303 did not apply to Midstream's circumstances.[1]

On February 25, 2008, Midstream filed an amended petition seeking the same relief as the original petition. The Smiths renewed their motion to dismiss, and following a hearing, the circuit judge issued a letter order finding that Midstream had the constitutional and statutory right to exercise the power of eminent domain be-

---

1. The Smiths also questioned Midstream's failure to obtain a certificate of convenience and necessity from the Arkansas Public Service Commission. Midstream thereafter applied to the Public Service Commission for a declaratory order determining whether it was required to obtain a certificate of convenience and necessity in order to exercise the power of eminent domain for the construction of a natural gas pipeline. On May 30, 2008, an administrative law judge determined that Midstream was not required to obtain a certificate of convenience and necessity because the Public Service Commission lacked regulatory authority over Midstream and its proposed pipeline project.

cause the taking at issue was for a public use. An order denying the Smiths' motion to dismiss was entered on November 7, 2008.[2]

On July 1, 2009, the circuit judge entered a final order of possession and reiterated his finding that sections 23–15–101 and 18–15–1303 were not unconstitutional. The order granted Midstream the immediate right of entry onto, and the possession of, the following portions of the Smiths' real property and approved this use:

> Permanent pipeline right-of-way across: Part of the Northwest Quarter (NW/4) Section Seven (07), Township Eight (08) North, Range Eight (08) West, more particularly described as follows, to wit: Thirty Feet (30′) on both sides of a centerline described as follows, to wit: Commencing at a found stone at the Northwest Corner of said Section Seven (7); Thence S 39°58′09″ E, 1753.6 feet to the Point of Beginning; Thence N 24°01′33″ W, 311.0 feet; Thence N 09°58′13″ E, 863.0 feet; Thence N 34°58′15″ E, 223.0 feet; to a point on the North line of said Section Seven (7), said point being the Point of Termination. In addition, Plaintiff, its permitees, agents and contractors, are entitled to have the immediate right of entry onto and possession of a temporary easement fifteen feet in width on the West side of the previously described permanent right-of-way.

The circuit judge also granted the Smiths' motion for supersedeas and stayed the order of possession pending appeal on condition that the Smiths post a supersedeas bond of $1000 to protect Midstream from "any damages sustained by the Plaintiff for the delay of the pipeline." In addition, Midstream was ordered to tender $4,250.00 into the registry of the court as a just-compensation deposit. The Smiths appealed to this court, but we were forced to remand the case to the circuit court for compliance with Arkansas Rule of Civil Procedure 54(b)(1). *See Smith v. Arkansas Midstream Gas Servs. Corp.*, 2010 Ark. 32, 2010 WL 199650. An amended order in full compliance with Rule 54(b) was entered on February 12, 2010. The Smiths now assert that the circuit judge erred by denying their motion to dismiss because Midstream "cannot claim the power of eminent domain under a constitutional delegation of authority through [Arkansas Code Annotated] § 23–15–101." The Smiths make several arguments in support of this assertion, which we will consider seriatim.

*a. Unconstitutional as Applied*

We first address the issue that Arkansas Code Annotated section 23–15–101 is unconstitutional as applied to the facts of this case. Section 23–15–101 provides in pertinent part:

> All pipeline companies operating in this state are given the right of eminent domain and are declared to be common carriers, except pipelines operated for conveying natural gas for public utility service.

Article 2, section 22, of the Arkansas Constitution reads: "[t]he right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." The Arkansas Constitution further provides that the power of eminent domain is an attribute of, and inherent in, a sovereign state. Ark. Const. art. 2, sec.

---

**2.** This order refers to "ACA 3–15–101." This clearly is a misprision as the code section at issue in this case is Arkansas Code Annotated section 23–15–101.

23; *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001).

It is well established that in light of Article 2, section 22 of the Arkansas Constitution, the right of eminent domain cannot be exercised for the purpose of acquiring property for private use and the General Assembly cannot exercise the power of eminent domain nor delegate its exercise except for public uses. *See, e.g., Arkansas State Highway Comm'n v. Alcott*, 260 Ark. 225, 539 S.W.2d 432 (1976); *Ozark Coal Co. v. Pennsylvania Anthracite Co.*, 97 Ark. 485, 134 S.W. 634 (1911); *Roberts v. Williams*, 15 Ark. 43 (1854). Without the consent of the owner, private property cannot be taken for private use, even under the authority of the legislature. *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967); *Mountain Park Terminal R.R. Co. v. Field*, 76 Ark. 239, 88 S.W. 897 (1905); *Williams*, 15 Ark. at 46.

Whether private property is being taken for a public or private use is a judicial question which the owner has a right to have determined by the courts. *Pfeifer*, 346 Ark. at 460, 57 S.W.3d at 721; *Raines*, 241 Ark. at 1083, 411 S.W.2d at 493; *Hogue v. Housing Authority of North Little Rock*, 201 Ark. 263, 144 S.W.2d 49 (1940). The landowner, however, bears a heavy burden in proving that the taking was not for a public use. *City of El Dorado v. Kidwell*, 236 Ark. 905, 370 S.W.2d 602 (1963); *Woollard v. State Highway Comm'n*, 220 Ark. 731, 249 S.W.2d 564 (1952).

Eminent-domain statutes are strictly construed in favor of the landowner. *Pfeifer*, 346 Ark. at 459, 57 S.W.3d at 720; *Loyd v. Southwest Ark. Util. Corp.*, 264 Ark. 818, 580 S.W.2d 935 (1979). All statutes, nevertheless, are presumed to be constitutional, and this court resolves all doubts in favor of constitutionality. *Arkansas Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 166 S.W.3d 550 (2004). The party challenging a statute's constitutionality has the burden of proving that it is unconstitutional. *Id.*

The Smiths contend that Midstream's proposed use of their property "is an absolute private one" in that Midstream's pipeline "is for the exclusive use of a single individual, or a collection of individuals less than the public." Citing *City of Little Rock v. Raines*, the Smiths assert that Midstream's use is not, in fact, a public use because "the public at large does not have an interest which would allow them to ship materials through [Midstream's] underground pipeline." Accordingly, the Smiths conclude that section 23–15–101 is unconstitutional as applied to the facts in this case because it granted the power of eminent domain to Midstream for a private use.

We disagree. This court recently rejected an as-applied challenge to section 23–15–101 in a case involving very similar facts. *See Linder v. Arkansas Midstream Gas Servs. Corp.*, 2010 Ark. 117, 362 S.W.3d 889. In *Linder*, landowners in Cleburne County also challenged Midstream's right to assert the power of eminent domain for a permanent pipeline easement over their land pursuant to section 23–15–101. They argued, similarly, that section 23–15–101 was unconstitutional in that it granted Midstream, a private, for-profit corporation, the right of eminent domain to acquire private property for a private use in violation of Article 2, section 22 of the Arkansas Constitution. The landowners further asserted that Midstream's taking was "clearly a private one" in that Midstream was undertaking "by special agreement in particular instances to transport gas for Chesapeake, a few royalty owners and other potential work-

ing interest owners." *Linder*, 2010 Ark. 117, at 7, 362 S.W.3d at 893. The landowners maintained that, under *City of Little Rock v. Raines*, this was not a public use in fact because it was "for the exclusive use of a collection of individuals less than public." *Id.*

After reviewing over one hundred years of relevant case law, this court said:

We conclude, in light of this case law, that section 23–15–101 is not unconstitutional as applied to the facts in the instant case. Section 23–15–101 delegates the power of eminent domain to all pipeline companies operating in this state as common carriers. As common carriers, the pipeline companies are required by law "to carry for all alike, and not at [their] option." *See Alpha Zeta Chapter of Pi Kappa Alpha Fraternity v. Sullivan*, 293 Ark. 576, 740 S.W.2d 127 (1987) (quoting *Arkadelphia Milling Co. v. Smoker Merch. Co.*, 100 Ark. 37, 139 S.W. 680 (1911)). Thus, section 23–15–101 affords the public the right to enjoy the use of a taking pursuant to this section, not by permission, but of right. In other words, "the law gives all the right to use it on equal terms." *Ozark Coal, supra.*

Furthermore, it makes no difference that only "a collection of a few individuals" may have occasion to use the pipeline after its completion. Again, the character of a taking, whether public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. *Ozark Coal, supra.* "If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small." *Ozark Coal*, 97 Ark. at 495, 134 S.W. at 634 (quoting *Phillips v. Watson*, [63 Iowa 28] 18 N.W. 659 (Iowa 1884). This court has clearly recognized that in determin-

ing whether the taking of property is necessary for public use, not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered. *Pfeifer*, 346 Ark. at 460, 57 S.W.3d at 72 [721]; *Woolard [Woollard] v. Ark. State Highway Comm'n*, 220 Ark. 731, 249 S.W.2d 564 (1952) (citing *Rindge Co. v. County of Los Angeles*, 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186] (1923)).

. . .

The Linders' reliance on *dicta* from *City of Little Rock v. Raines* is misplaced. That case does not stand for the proposition that the public as a whole must in fact use the taking or in fact have occasion to use the taking. On the contrary, in *Raines*, the court focused on the fact that the industrial park would be limited to private industries, and for that reason eminent domain, was not appropriate. The "public-use-in-fact" argument, espoused by the Linders, was rejected by this Court in *Dowling v. Erickson*, 278 Ark. 142, 644 S.W.2d 264 (1983), where we said:

Appellant argues that the right of eminent domain cannot be exercised unless it is *in fact* for use by the public, citing *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967). The appellant, however, misconstrues the term "public use in fact", as used in that case. In *Raines*, the City of Little Rock had issued revenue bonds and levied taxes pursuant to Amendment 49 and implementing legislation (Ark. Stat. Ann. §§ 19–2702–19–2719 (Repl.1956), and was attempting to condemn property for an industrial park in conjunction with a port authority. We said that cities may exercise eminent domain only as expressly granted by the constitution or statutes and such grants are to be strictly

construed against the condemnor. We held that neither Amendment 49 nor implementing legislation delegated to the cities the right of eminent domain for an industrial park. The right must be given for a use that in fact directly benefits the public. The point the appellant makes is misguided. The distinction between public and private use is qualitative-not quantitative. In discussing Ark. Stat. Ann. Section § 76–110, the court in *Pippin* [*v. May*], *supra* [78 Ark. 18, 93 S.W. 64 (1906) ], states:

> The character of a road, whether public or private is not determined by its length or the places to which it leads, nor by the number of persons using it. *If it is free and common to all citizens, it is a public road though but few people travel upon it.*

*Dowling,* 278 Ark. at 143–44, 644 S.W.2d at 265 (emphasis in original); *see also Hale* [*v. Southwest Ark. Water Dist.*], 244 Ark. [647,] at 651, 427 S.W.2d [14,] at 16 [ (1968) ] ("Nor can we find anything to the contrary in *City of Little Rock v. Raines*.").

*Linder,* 2010 Ark. 117, at 12–15, 362 S.W.3d at 896–98.

In its amended order in the instant case, the circuit court found as follows regarding the right of the public to use the proposed pipeline:

> Arkansas Midstream refers to the proposed line as the "Sexton line." The Sexton line will be available to serve multiple natural gas producers who have working interests in Sections 5, 6, 7, 8, and 18. One of the working interest owners is Chesapeake Operating, Inc., as agent for Chesapeake Exploration, L.L.C. However, there are multiple other working interest owners including SEECO, Inc., XTO Energy, Inc., and Dan A. Hughes Company, having leasehold interests and thus working interests in one or more of the gas production units created in Sections 5, 6, 7, 8, and 18 [that] would have access to transport produced natural gas through the Sexton line. Moreover, there is unleased acreage in Section 5, 6, 7, and 8. The owners of the unleased mineral interests may elect to participate as working interest owners and, also, would have access to the Sexton line for the transportation of produced natural gas. In addition to working interest owners, there are scores of overriding royalty interests or royalty interests from the sale of natural gas produced in the identified sections.

As the circuit court's findings of fact clearly illustrate, Midstream's proposed pipeline is available to "multiple natural gas producers who have working interests" in the surrounding area in addition to Chesapeake. Furthermore, the areas to be served by Midstream's proposed pipeline include owners of unleased mineral interests who would have access to the proposed pipeline if they elected to participate as working-interest owners in the future. As in *Linder,* it is clear that Midstream plans to operate its natural gas pipeline as a common carrier, meaning that the public has the equal right to use the pipeline to transport natural gas. Because of this, section 23–15–101 has not granted the power of eminent domain to Midstream for a private use in violation of Article 2, section 22 of the Arkansas Constitution.

We hold, as we did in *Linder,* that section 23–15–101 is not unconstitutional as applied to the facts of this case. By exercising the power of eminent domain as a common carrier under section 23–15–101, Midstream must afford the public the equal right to use the pipeline to transport

natural gas. We acknowledged in *Linder* that "the character of a taking, whether public or private, is determined by the extent of the right to use it, and not by the extent to which the right is exercised." *Linder,* 2010 Ark. 117, at 13, 362 S.W.3d at 897; *see also Ozark Coal Co. v. Pennsylvania Anthracite R. Co.,* 97 Ark. 495, 134 S.W. 634 (1911) ("If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small."). Not only the present demands of the public, but those which may be fairly anticipated in the future, are considered in determining whether the taking of property is for a public use. *See Linder, supra.* The same holds true for the case at hand.

*b. Facial Challenge*

The Smiths also mount a facial challenge to section 23–15–101 arguing that "its plain language would allow for a delegation of the power of eminent domain to take private property for a private use." The Smiths then attempt to demonstrate, hypothetically, how section 23–15–101 could be applied in an unconstitutional manner.

This court has said that "[a] facial invalidation of a statute is appropriate if it can be shown that under *no* circumstances can the statute be constitutionally applied." *Linder v. Linder,* 348 Ark. 322, 349, 72 S.W.3d 841, 856 (2002) (emphasis in original); *McDougal v. State,* 324 Ark. 354, 360, 922 S.W.2d 323, 326 (1996) (one cannot challenge a statute "on the ground that it may conceivably be applied in hypothetical situations not before the court"); *see also Los Angeles Police Dep't v. United Reporting Publishing Corp.,* 528 U.S. 32, 38, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) ("The traditional rule is that 'a person to whom a statute may constitutionally be applied may not challenge the statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court.' "). Because we hold that section 23–15–101 has been constitutionally applied to the facts of this case, we further hold that a facial invalidation of section 23–15–101 cannot obtain.

*c. Vagueness*

The Smiths further assert that section 23–15–101 is void for vagueness under the due process clause. A statute is unconstitutionally vague under due-process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and, in addition, it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. *Landmark Novelties, Inc. v. Arkansas State Bd. of Pharmacy,* 2010 Ark. 40, 358 S.W.3d 890. In contrast, a statute is constitutional if its language conveys sufficient warning when measured by common understanding and practice. *Id.* A statute must not be so vague and standardless that it leaves judges free to decide, without any legally fixed standards, what is prohibited and what is not on a case-by-case basis. *Arkansas Tobacco Control Bd. v. Sitton,* 357 Ark. 357, 166 S.W.3d 550 (2004).

The Smiths' vagueness argument is without merit. As an initial matter, we question whether the Smiths have standing to assert a vagueness challenge to section 23–15–101. This court has recognized that a law is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application." *Benton County Stone Co., Inc. v. Benton County Planning Bd.,* 374 Ark. 519, 523, 288 S.W.3d 653, 656 (2008). In the instant case, section 23–15–101 is a delegation of the power of eminent domain to pipeline companies, and by its express language, it neither requires nor forbids

the Smiths to act in any way. In general, a party lacks standing to challenge a statute for vagueness unless it applies to his or her own conduct. *See, e.g., United States v. Woods*, 915 F.2d 854, 862 (3d Cir.1990) ("[O]utside of the First Amendment context, a party has standing to raise a vagueness challenge only if the challenged statute is vague as to that party's conduct.") *cf. Kale v. Arkansas State Medical Bd.*, 367 Ark. 151, 157, 238 S.W.3d 89, 93 (2006) ("When challenging the constitutionality of a statute on the grounds of vagueness, the individual challenging the statute must be one of the 'entrapped innocent,' who has not received fair warning."). Again, section 23–15–101 neither requires nor forbids the Smiths to act in any way. For this reason, the Smiths lack standing to assert that section 23–15–101 is vague as to their conduct, and we will not address this point.

As a final point, the Smiths assert that Arkansas Code Annotated section 18–15–1303 does not delegate the power of eminent domain to Midstream for the taking of private property. We need not address this point in light of our holding that the condemnation is appropriate under section 23–15–101.

Affirmed.

HANNAH, C.J., not participating.