2010 Ark. 480

**The RALPH LOYD MARTIN REVOCABLE TRUST DECLARATION DATED the FIRST DAY OF APRIL 1994; Ralph Loyd Martin, Trustee of the Ralph Loyd Martin Revocable Trust Declaration Dated the First Day of April 1994; The Festus Mary Martin**

---

Revocable Trust Declaration Dated the First Day of April 1994; and Festus Mary Martin, Trustee of the Festus Mary Martin Revocable Trust Declaration Dated the First Day of April 1994, Appellants

v.

**ARKANSAS MIDSTREAM GAS SERVICES CORPORATION,** Appellee.

No. 10–192.

Supreme Court of Arkansas.

Dec. 9, 2010.

Morgan Law Firm, P.A., Clinton, by: M. Edward Morgan and Hiland Law Firm, P.A., by: J. Cody Hiland, Conway, for appellant.

Daily & Woods, P.L.L.C., Fort Smith, by: Jerry L. Canfield, for appellee.

DONALD L. CORBIN, Justice.

Appellants, The Ralph Loyd Martin Revocable Trust Declaration Dated The First Day Of April 1994; Ralph Loyd Martin,. Trustee Of The Ralph Loyd Martin Revocable Trust Declaration Dated The First Day Of April 1994; The Festus Mary Martin Revocable Trust Declaration Dated The First Day Of April 1994; and Festus Mary Martin, Trustee Of The Festus Mary Martin Revocable Trust Declaration Dated The First Day Of April 1994 (collectively, "the Martin Trusts"), appeal the order of the White County Circuit Court directing that Appellee Arkansas Midstream Gas Services Corporation ("Midstream") take possession of a certain part of the Martin Trusts' land pursuant to the power of eminent domain to construct and maintain a pipeline for the gathering of natural gas. On appeal, the Martin Trusts challenge the constitutionality of the delegation of the power of eminent domain to Midstream. Jurisdiction is properly in this court pursuant to Ark. Sup.Ct. R. 1–2(a)(1) (2010). We have recently rejected the arguments raised in this appeal and accordingly affirm the order of the circuit court.

Midstream is an Arkansas corporation presently engaged in the construction of a gathering pipeline for the transmission of natural gas across certain lands in White County. It is a wholly owned subsidiary of Chesapeake Energy Corporation, which is an Oklahoma corporation that engages in the exploration and production of oil and gas in the Fayetteville Shale formation. The Martin Trusts own approximately 150 acres of real property located in Section Twelve (12), Township Seven (7) North, Range Eight (8) West, White County. According to the Martin Trusts, the property has long been held by the Martin family and maintained in pristine form; the Trusts' land contains a pond, a creek, and many large and aged hardwood trees, as well as an abundance of various wildlife.

Midstream attempted to negotiate a right-of-way agreement with the Martin Trusts for the purpose of constructing and maintaining a natural gas gathering pipeline across a portion of the Martin Trusts' land. The Martin Trusts maintained below that the proposed pipeline would damage the land irreparably because it would require the removal of 100–year-old trees that provide a privacy screen. After Midstream's negotiations with the Martin Trusts proved unsuccessful, Midstream relied on the authority of the Public Utilities Code, Ark.Code Ann. § 23–15–101 (Repl. 2002), and the Eminent Domain Code, Ark. Code Ann. § 18–15–1303 (Repl.2003), and petitioned the White County Circuit Court on June 2, 2008, to assert the power of eminent domain to condemn a portion of the Martin Trusts' property to acquire a permanent pipeline easement of sixty feet and a temporary construction easement of fifteen feet on the north side of the permanent easement.

On July 28, 2008, the Martin Trusts moved to dismiss Midstream's eminent-domain action, alleging that Midstream did not have the authority to exercise the right of eminent domain for two reasons: (1) because Midstream was seeking to acquire property for private rather than public use in violation of the Arkansas Constitution, article 2, section 22; and (2) because section 23–15–101 was unconstitutionally void for vagueness in that it did not contain any legal standards to determine whether a

pipeline is being constructed by a common carrier for a public purpose.

On July 31, 2008, the circuit court held a hearing on the motion to dismiss. At that hearing, the circuit court also heard arguments on two other eminent-domain petitions filed by Midstream. In one of those cases, which has since been affirmed on appeal to this court, *Smith v. Arkansas Midstream Gas Services Corp.*, 2010 Ark. 256, 377 S.W.3d 199, Midstream had sought a declaration from the Arkansas Public Service Commission ("PSC") that a certificate of convenience and necessity ("CCN") was not required for the construction and operation of natural gas gathering pipelines. Those proceedings resulted in a declaration that "the gathering pipeline system Arkansas Midstream is proposing to build and operate in White County in this matter is not a pipeline system that falls within the regulatory ambit of the Arkansas Public Service Commission insofar as a CCN is required for it to be constructed and operated." Thus, for purposes of the hearing on the Martin Trusts' motion to dismiss, the parties in the present case entered into a stipulation of facts, which was based in part on the facts stipulated to in Midstream's declaratory proceedings before the PSC in the *Smith* case. The parties sought and received permission from this court to supplement the record in this case with the PSC proceedings in the *Smith* case.

After the hearing on the Martin Trusts' motion to dismiss, the circuit court took the matter under advisement and then issued a letter ruling on August 7, 2008, finding that Midstream had the constitutional and statutory right to condemn a portion of the Martin Trusts' private property for the public use of gathering natural gas for shipment to larger pipelines. The Martin Trusts moved for a stay of that ruling, and after conducting a hearing on

that motion, the circuit court entered its written order containing its findings of fact and conclusions of law on December 18, 2008.

In its December 18 order, the circuit court reiterated its finding that Midstream had the constitutional and statutory power of eminent domain to condemn the Martin Trusts' private property for public use, and that the gathering of natural gas for shipment to larger pipelines carrying gas to market was a public use. Accordingly, the order granted Midstream the immediate right of entry onto, and the possession of, the sixty-foot permanent easement and the fifteen-foot temporary easement on the Martin Trusts' land as requested in Midstream's petition. The order directed Midstream to tender $15,850 into the registry of the court as a just-compensation deposit and granted the Martin Trusts a jury trial to determine just compensation. In addition, the order also granted the Martin Trusts' motion for supersedeas and stayed the order of possession pending appeal, on condition that the Martin Trusts post a supersedeas bond of $25,000 to protect Midstream from any damages sustained by the delay of the pipeline.

The Martin Trusts appealed to this court, but because the order failed to set out the factual underpinnings as to why a hardship or injustice would result if an immediate appeal were not permitted, we dismissed without prejudice for lack of jurisdiction due to noncompliance with Ark. R. Civ. P. 54(b)(1). *See Ralph Loyd Martin Revocable Trust v. Ark. Midstream Servs. Corp.*, 2009 Ark. 563, 2009 WL 3789087. An amended order in full compliance with Rule 54(b) was entered on December 16, 2009. The Martin Trusts now assert that the circuit court erred in ruling that its property was taken in a manner consistent with the Arkansas Constitution. The Martin Trusts make two

arguments in support of this assertion, both of which we have recently rejected in similar cases.

■ For its first point on appeal, the Martin Trusts contend that the circuit court erred in ruling that the General Assembly had properly delegated its power of eminent domain to Midstream for the purpose of constructing a pipeline for the gathering of natural gas. The |6Martin Trusts argue that the delegation of the sovereign's eminent-domain power to pipeline companies in sections 23–15–101 and 18–15–1303 are "utterly without any standard, required use, or purpose" and therefore unconstitutionally vague in violation of the right to due process. Specifically, the Martin Trusts argue that section 23–15–101 does not provide any fixed standard for determining what is a "pipeline company," and fails to distinguish those companies laying pipe for a wholly private interest from those laying pipe for public use. The Martin Trusts argue further that the statute fails to even require that the property taken be used for the construction of a pipeline. The vagueness issue caused by this lack of standards, argue the Martin Trusts, is exacerbated by the lack of regulation and opportunity for comment by the landowners. Finally, relying on Justice Hickman's dissent in *Young v. Energy Transportation Systems, Inc. of Arkansas*, 278 Ark. 146, 644 S.W.2d 266 (1983), the Martin Trusts assert that this standardless delegation of the eminent-domain power will lead to abusive and unconscionable takings of private property.

This court has recently rejected a landowner's void-for-vagueness challenge to section 23–15–101 in *Smith*, 2010 Ark. 256, 377 S.W.3d 199. We did so on the basis that the landowners making the vagueness challenge lacked standing. We stated as follows:

The Smiths' vagueness argument is without merit. As an initial matter, we question whether the Smiths have standing to assert a vagueness challenge to section 23–15–101. This court has recognized that a law is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application." *Benton County Stone Co., Inc. v. Benton County Planning Bd.*, 374 Ark. 519, 523, 288 S.W.3d 653, 656 (2008). In the instant case, section 23–15–101 is a delegation of the power of eminent domain to pipeline companies, and by its express |7language, it neither requires nor forbids the Smiths to act in any way. In general, a party lacks standing to challenge a statute for vagueness unless it applies to his or her own conduct. *See, e.g., United States v. Woods*, 915 F.2d 854, 862 (3d Cir.1990) ("[O]utside of the First Amendment context, a party has standing to raise a vagueness challenge only if the challenged statute is vague as to that party's conduct."); *cf. Kale v. Arkansas State Medical Bd.*, 367 Ark. 151, 157, 238 S.W.3d 89, 93 (2006) ("When challenging the constitutionality of a statute on the grounds of vagueness, the individual challenging the statute must be one of the 'entrapped innocent,' who has not received fair warning."). Again, section 23–15–101 neither requires nor forbids the Smiths to act in any way. For this reason, the Smiths lack standing to assert that section 23–15–101 is vague as to their conduct, and we will not address this point.

*Smith*, 2010 Ark. 256, at 12–13, 377 S.W.3d at 206–07.

As with the Smiths in the *Smith* case, section 23–15–101 neither requires nor forbids the Martin Trusts to act in any way in

the present case. Because the challenged statute in no way applies to the Martin Trusts' conduct, the Martin Trusts have no standing to challenge section 23–15–101 on the basis that it is void for vagueness under due-process standards. As in *Smith*, we do not address this point any further.

■ For their second point on appeal, the Martin Trusts contend that the circuit court erred in determining that the gathering pipeline is a public use of the Martin Trusts' property. In support of this argument, the Martin Trusts rely primarily on *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967). The Martin Trusts acknowledge that this court has recently rejected this "private use" challenge in *Linder v. Arkansas Midstream Gas Services Corp.*, 2010 Ark. 117, 362 S.W.3d 889. However, the Martin Trusts contend that *Linder* is distinguishable from the present case because there is no record in this case that Midstream ₈will operate the pipeline in question as a common carrier or do business with anyone who seeks to use the pipeline. This attempt to distinguish *Linder* is simply without merit.

Before addressing the merits of the Martin Trusts' attempt to distinguish *Linder*, however, we pause to emphasize a point we first made in footnote three of the *Linder* opinion. That point is, that although "from time to time the parties and even our case law speak in terms of public *purpose*, the Arkansas Constitution uses the term public 'use.' *See* Ark. Const. art. 2, § 22. We are guided by our Constitution in this opinion." 2010 Ark. 117, at 7 n. 3, 362 S.W.3d at 893 n. 3. Thus, we reiterate today that our constitution's requirement is that the power of eminent domain be invoked for public use.

The record in this case reveals that the parties stipulated to the following pertinent facts:

> The subject gas transmission line project, ("Kitts Line") will cross the [Martin Trusts'] property in the Southwest Quarter of Section 12, Township 7 North, Range 8 West, for the purpose of connecting one existing and one additional proposed gas production wells located in Section 7, Township 7 North, Range 7 West, to the pipeline. The Kitts Line also will connect the Patricia Barger proposed well in Section 18, Township 7 North, Range 7 West. The pipeline will then terminate at a major transmission pipeline located in Section 11 of Township 7 North, Range 8 West. As to the existing and proposed gas production wells which will be connected to the Kitts Line (and which are previously unserved by any pipeline), there are *several working interest owners (as to which Chesapeake Operating, Inc. is only one) who own the gas transported through the Kitts Line and there are multiple royalty owners who will receive royalties from the gas sold from the sale of the gas transported through the Kitts Line.* As the Kitts Line will gather gas from several gas production units, the line cannot be constructed under the lease rights applicable to any one governmental section.

(Emphasis added.)

These facts are remarkably similar to the facts in *Linder* and *Smith*, as all three cases involve a gathering pipeline for use by multiple royalty owners and several working-interest owners, including but not limited to, Midstream's parent corporation, Chesapeake. These facts were relevant to this court's conclusions in *Linder* and *Smith* that the gathering pipelines in those cases were indeed for public use. After

reviewing over 100 years of case law, this court said the following:

> We conclude, in light of this case law, that section 23–15–101 is not unconstitutional as applied to the facts in the instant case. Section 23–15–101 delegates the power of eminent domain to all pipeline companies operating in this state as common carriers. As common carriers, the pipeline companies are required by law "to carry for all alike, and not at [their] option." *See Alpha Zeta Chapter of Pi Kappa Alpha Fraternity v. Sullivan,* 293 Ark. 576, 740 S.W.2d 127 (1987) (quoting *Arkadelphia Milling Co. v. Smoker Merch. Co.,* 100 Ark. 37, 139 S.W. 680 (1911)). Thus, section 23–15–101 affords the public the right to enjoy the use of a taking pursuant to this section, not by permission, but of right. In other words, "the law gives all the right to use it on equal terms." *Ozark Coal [Co. v. Pennsylvania Anthracite R. Co.,* 97 Ark. 495, 134 S.W. 634 (1911) ].
>
> Furthermore, it makes no difference that only "a collection of a few individuals" may have occasion to use the pipeline after its completion. Again, the character of a taking, whether public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. *Ozark Coal, supra.* "If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small." *Ozark Coal,* 97 Ark. at 495, 134 S.W. at 634 (quoting *Phillips v. Watson,* [63 Iowa 28,] 18 N.W. 659 (Iowa 1884)). This court has clearly recognized that in determining whether the taking of property is necessary for public use, not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered. *Pfeifer [v. City of Little Rock ],* 346 Ark. [449,] 460, 57 S.W.3d [714,] 72[1] [ (2001) ];

> *Woollard v. Ark. State Highway Comm'n,* 220 Ark. 731, 249 S.W.2d 564 (1952) (citing *Rindge Co. v. County of Los Angeles,* 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186] (1923)).
>
> . . . The right of members of the public to use the pipeline to transport natural gas, whether currently or in the future, determines the character of the usage. By ⌊₁₀ exercising the right of eminent domain under section 23–15–101, Midstream has elected to operate its pipeline as a common carrier, giving the public the equal right to use the pipeline to transport natural gas. As the Trowbridge affidavit states, there are "several working interests" that will use the pipeline upon completion as well as "multiple other potential working interests (including unleased surface owners who may elect to participate in the drilling of wells in the involved sections)." Should Midstream or its successors at any point deny the use of the pipeline to those having occasion to use it, the condemnation will be revoked. *See St. Louis Iron Mountain & S. Ry. v. Petty,* [57 Ark. 359, 21 S.W. 884 (1893) ].

*Linder,* 2010 Ark. 117, at 12–14, 362 S.W.3d at 896–97.

This court affirmed *Linder's* holding regarding public use in *Smith.* The *Smith* court relied on the above-quoted language from *Linder* and concluded as follows:

> As in *Linder,* it is clear that Midstream plans to operate its natural gas pipeline as a common carrier, meaning that the public has the equal right to use the pipeline to transport natural gas. Because of this, section 23–15–101 has not granted the power of eminent domain to Midstream for a private use in violation of Article 2, section 22 of the Arkansas Constitution.

We hold, as we did in *Linder*, that section 23–15–101 is not unconstitutional as applied to the facts of this case. By exercising the power of eminent domain as a common carrier under section 23–15–101, Midstream must afford the public the equal right to use the pipeline to transport natural gas. We acknowledged in *Linder* that "the character of a taking, whether public or private, is determined by the extent of the right to use it, and not by the extent to which the right is exercised." *Linder*, 2010 Ark. 117, at 13, 362 S.W.3d at 897; *see also Ozark Coal Co. v. Pennsylvania Anthracite R.R. Co.*, 97 Ark. 495, 134 S.W. 634 (1911) ("If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small."). Not only the present demands of the public, but those which may be fairly anticipated in the future, are considered in determining whether the taking of property is for a public use. *See Linder, supra.* The same holds true for the case at hand.

*Smith*, 2010 Ark. 256, at 9–10, 377 S.W.3d at 205–06.

Just as in *Linder* and *Smith*, the record in the present case establishes that, by exercising the right of eminent domain under section 23–15–101, Midstream has again elected to operate its gathering line as a common carrier, thereby giving the public the equal right to use the pipeline to transport natural gas to market. Stated another way, when Midstream elects to assert the power of eminent domain delegated in section 23–15–101, by operation of that statute, Midstream is a common carrier and is thereby subject to the public-use requirement expressed in article 2, section 22 of the Arkansas Constitution. The stipulated facts in the present case establish that the Kitts Line will be used by several working-interest owners other than Chesapeake and by multiple royalty owners, and that all working-interest owners using the line will pay a common charge of sixty-five cents per MMBTU for pipeline services. Accordingly, and consistently with *Linder* and *Smith*, we conclude on the facts here presented that the public has a right to use the Kitts Line and, therefore, that section 23–15–101 has not granted the power of eminent domain to Midstream for private use in violation of the Arkansas Constitution. The circuit court did not err in finding that the Kitts Line is for public use.

As a final matter, we note that *Linder* involved a constitutional challenge to section 23–15–101 only as applied to the facts of that case, and that in the present case, the Martin Trusts advance a facial challenge to the statute. While the Martin Trusts are correct that *Linder* did not involve a facial challenge but solely an "as applied" challenge to section 23–15–101, the *Smith* case did present a facial challenge to the statute, which we rejected. We stated as follows:

The Smiths also mount a facial challenge to section 23–15–101 arguing that "its plain language would allow for a delegation of the power of eminent domain to take private property for a private use." The Smiths then attempt to demonstrate, hypothetically, how section 23–15–101 could be applied in an unconstitutional manner.

This court has said that "[a] facial invalidation of a statute is appropriate if it can be shown that under *no* circumstances can the statute be constitutionally applied." *Linder v. Linder*, 348 Ark. 322, 349, 72 S.W.3d 841, 856 (2002) (emphasis in original); *McDougal v. State*, 324 Ark. 354, 360, 922 S.W.2d 323, 326 (1996) (one cannot challenge a statute

"on the ground that it may conceivably be applied in hypothetical situations not before the court"); *see also Los Angeles Police Dep't v. United Reporting Publishing Corp.,* 528 U.S. 32, 38 [120 S.Ct. 483, 145 L.Ed.2d 451] (1999) ("The traditional rule is that 'a person to whom a statute may constitutionally be applied may not challenge the statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court.' "). Because we hold that section 23–15–101 has been constitutionally applied to the facts of this case, we further hold that a facial invalidation of section 23–15–101 cannot obtain.

*Smith,* 2010 Ark. 256, at 10–11, 377 S.W.3d at 205–06.

Likewise, because we have determined that section 23–15–101 was constitutionally applied to the Martin Trusts, the Martin Trusts cannot now be heard on a claim that the statute may conceivably be applied unconstitutionally to others in situations not before this court. *See Smith,* 2010 Ark. 256, 377 S.W.3d 199. This is true, regardless of whether the facial challenge is asserted in the context of the private-versus-public-use argument advanced in *Smith,* or in the context of the vagueness argument, as advanced presently by the Martin Trusts. Moreover, if, as we have previously concluded, the Martin Trusts have no standing to challenge section 23–15–101 as void for vagueness because the statute does not regulate any of the Trusts' conduct, it follows that the Martin Trusts likewise have no standing to advance a facial challenge to the vagueness of the statute.

In summary, we observe that in *Linder* and *Smith,* we have recently rejected the arguments raised in the present appeal by the Martin Trusts. Those cases are controlling of the issues presented in this case. The record in this case clearly demonstrates that Midstream will construct and operate the gathering line as a common carrier and that it will be used by multiple royalty owners and working-interest owners who will pay the same rate. Accordingly, we find no error in the circuit court's conclusion that Midstream's use of the eminent-domain power granted to pipeline companies in section 23–15–101 to condemn the Martin Trusts' property amounts to a public use. The order appealed is affirmed.

Special Justice NATE COULTER joins in this opinion.

HANNAH, C.J., not participating.